ANTHONY CICERO AND ARTHUR LEE, PLAINTIFFS-RESPONDENTS, v. NELSON TRANSPORTATION CO., INC., DEFENDANT-APPELLANT.

GEORGE FENTY, AMELIO SANTORO AND WALTER EGBER, PLAINTIFFS-RESPONDENTS, v. NELSON TRANSPORTATION CO., INC., DEFENDANT-APPELLANT.

Submitted October 6, 1942—Decided February 2, 1943.

Before Justices BODINE, HEHER and PERSKIE.

For the appellant, *Archie E. Shilling* (*Louis Rubenstein*, of counsel).

For the respondents, *Stephen Mongiello*.

The opinion of the court was delivered by

HEHER, J.   These are actions in tort for negligence in the management of a ferry service operated by defendant over the river Kill von Kull between Bayonne and Staten Island.  One of its termini in Bayonne was a part of the water front premises of the Marine Maintenance Corporation.  The dock at this point consisted of a pier and float, linked together by chains.  A gangplank descending from the pier to the float constituted the means of ingress and egress to and from the ferry boat docked alongside the float.  Defendant was licensed by the federal government to carry passengers for hire; but its service was in fact limited to the carriage of employees of the industries located at Constable Hook, and others having business relations with them, for hire paid by the passengers themselves.

Plaintiffs were employees of the Marine Corporation.  As they were in the act of boarding one of defendant's ferry boats—described as a motor launch—for conveyance to their homes on Staten Island, the gangplank "broke near the top" and "collapsed," and they were thrown into the river and injured.  The District Court Judge resolved the issues in their favor; and the defendant appeals from the consequent judgments.

The first point made is that defendant was not a common carrier and "owed no duty to the plaintiffs with respect to the gangplank."

Defendant was the operator of a public conveyance, limited, however, to the transportation of those having business relations with the plants in the area mentioned.  But it does not matter whether it was a common or a private carrier.  It owed to its passengers for hire the duty of such care as a reasonably prudent person would exercise in the provision and maintenance of a safe and adequate means of ingress and egress to and from its boats.  It was not an insurer of the safety of its passengers; but it was bound to exercise care

commensurate with the risk of danger attending the entry and exit of passengers into and from its boats. And this was certainly its duty with respect to the maintenance of a gang-plank devoted to such use, even though the dock itself was upon the premises of the Marine Corporation and under its control, subject to defendant's user. It extended to plaintiffs an invitation to use this means in boarding the boat, and the duty of reasonable care was an incident of the invitation. As respects this obligation, it is of no significance that the pier was owned by the Marine Corporation. It was the place of ingress and egress supplied by defendant to plaintiffs; and it owed to them the duty of reasonable care to render it safe for such use. *Yetter* v. *Gloucester Ferry Co.*, 76 *N. J. L.* 249. The operator of a ferry is under the duty of reasonable care for the safety of a walkway outside its ferry house pro-vided for the use of its passengers. *Exton* v. *Central Railroad Co.*, 62 *Id.* 7; *affirmed*, 63 *Id.* 356. This principle was reiterated by the Court of Errors and Appeals in a case involving injuries sustained by a passenger on a way under a ferry shed leading to a street, which, though a part of the street, was "inside of the sign of the ferry company labeled 'entrance,' and used by the passengers of the company in going to and from the ferry house, especially when it is the only way provided or usable for the purpose." *Fortein* v. *Delaware, Lackawanna and Western Railroad Co.*, 90 *Id.* 137.

It is also contended that there was no proof of negligence. This point, too, is untenable.

The maxim *res ipsa loquitur* is applicable. This rule, as applied to actions of negligence, is founded on the hypotheses that the instrumentality producing the injury was under the management or control of the defendant, and that, in the general experience of mankind, the event producing the injury does not happen unless the person in control has failed to exercise due care. In such circumstances, neg-ligence may reasonably be inferred, and therefore the occur-rence itself affords *prima facie* evidence of a want of due care. The maxim represents an exception to the general rule that the *onus* of proof of the negligence alleged is in the first instance on the plaintiff; and it embraces only those cases where the occurrence bespeaks the defendant's

negligence, *i. e.,* where the natural inference from the fact of the happening of the event is that it ensued from defend· ant's failure to use due care. It is a rule of evidence merely, and not of substantive law. *Bahr* v. *Lombard, Ayers & Co., 53 N. J. L.* 233; *Sheridan* v. *Foley,* 58 *Id.* 230; *Whalen* v. *Consolidated Traction Co.,* 61 *Id.* 606; *Bergen County Traction Co.* v. *Demarest,* 62 *Id.* 755; *Mumma* v. *Easton and Amboy Railroad Co.,* 73 *Id.* 653; *Hughes* v. *Atlantic City, &c., Railroad Co.,* 85 *Id.* 212; *Rapp* v. *Butler-Newark Bus Lines,* 103 *Id.* 512; *Sheridan* v. *Arrow Sanitary Laundry Co.,* 105 *Id.* 608; *Egner* v. *Hudson and Manhattan Railroad Co.,* 109 *Id.* 367; *Smith* v. *Kirby,* 115 *Id.* 225; *Noonan* v. *Great Atlantic and Pacific Tea Co.,* 104 *Id.* 136; *Cleary* v. *Camden,* 118 *Id.* 215; *affirmed,* 119 *Id.* 387. It is grounded in part upon the defendant's superior knowledge or opportunity for explanation as to the cause of the accident. 45 *C. J.* 1205.

The rationale of the rule is that there is in the circumstances reasonable evidence of the defendant's negligence. The question is whether in the absence of an explanation by the defendant, the occurrence is such as reasonably warrants the inference of the want of the requisite degree of care on his part. Do the circumstances attending the occurrence of the event, tested in the light of common knowledge and experience, furnish reasonable grounds for the conclusion that if due care had been exercised by the person having control of the instrumentality causing the injury, the mishap would not have occurred? If such an inference is sustainable on the ground of probability, a *prima facie* case is established. This is so here, if there was evidence that defendant had the management and control of the instrumentality which caused the injury.

As to the latter element, defendant did not rest upon its submission that, under the evidence adduced by plaintiffs, the maxim had no application, but offered evidence tending to show that the pier was in the possession and control of the Marine Corporation and it did not have the right to repair or replace an unsafe gangplank. And it introduced evidence that it had undertaken periodic inspections of the float and gangplank; and it was contended that this duty had been.

fulfilled. Its president testified that if the gangplank "was known to us to be dangerous, we wouldn't transport  *  *  * the passengers—we would leave them on the other side;" and that "If we saw that the float" and "the gangway needed repairs," or "we deemed it to be a dangerous condition,  *  *  * we would report it to the owners of the property." He did not "remember" when the last inspection was made. The pier was "used exclusively" by defendant. Thus, it was established that defendant had sufficient control of the gangplank to render performance of the obligation so assumed; and it was reasonably inferable that due care had not been exercised in this regard. Its unsafe condition was not discovered and rectified or reported. The gangplank had been in use for a considerable period of time and had been subjected to severe daily usage through the impact of boats entering the dock. Its disintegration through wear and tear is the normal inference; defendant offered no evidence whatever to account for its collapse. And so there was sufficient evidence to sustain the inference that defendant had failed in the performance of its duty to provide a means of ingress and egress reasonably safe for such usage. Negligence was a fair circumstantial deduction wholly apart from the doctrine of *res ipsa loquitur*. *Vide Cleary* v. *Camden, supra*. If it had satisfied the conceded duty of inspection, plaintiffs would not have suffered the injuries for which recoveries were had.

Let the judgments be affirmed, with costs.