Defendant appeals from a judgment entered against it in the Superior Court, Law Division, in the sum of $25,500. Plaintiff's suit was instituted to recover damages arising out of the death of her husband, Bernardino Mormelo, allegedly attributable to the defendant's negligence in the storing of a large door, which subsequently fell on and killed plaintiff's intestate.
At the time of the accident, defendant corporation, a general contractor, was engaged in the performance of a contract for restoration of buildings of the Thatcher Furnace Company, previously damaged by fire. Four weeks prior to the accident, pending its installation, defendant's employees had *Page 354 
placed a metal-covered fire door, approximately 9' x 12' and weighing 1,200 pounds, in such a position that it leaned against the "plate building." Between the bottom of the fire door and the cement walk, were inserted two pieces of wood 2" x 4", on which the door rested. There was no testimony as to the precise shape of the 2 x 4s or the kind of material used. The door was not braced to hold it in position. Plaintiff's decedent, Bernardino Mormelo, at the time of the accident, was engaged with DuBeau and Gabriel, two other Thatcher employees, in transporting from one building to another approximately 1,000 pounds of sheet steel, loaded on a hand truck. DuBeau and Gabriel were pushing and Mormelo, walking backward, was pulling the truck on a concrete walk approximately 10' wide, immediately adjacent to the building known as the "plate building." DuBeau, the only witness to testify as to the actual occurrence, stated that he began to feel the weight of the loaded truck and looking up to see the cause thereof, observed decedent and the door at the same time; that the door was practically in a perpendicular position and in the act of falling over; that he shouted a warning to Mormelo, who turned and made an unsuccessful attempt to escape. In order to rescue Mormelo, a gang of men lifted the door and placed it against the building. The proofs are not clear as to the exact position of the door as it rested against the building prior to and at the time of the accident. Defendant concedes that the door when originally placed was with the 12' side resting on the 2 x 4s and the 9' side elevated and resting against some part of the building. Defendant's foreman, Heffernan, stated that, so far as he had observed, the position of the door had not been changed since it was placed there by defendant's employees. Mr. White, general superintendent of the Thatcher Company, testified that when the door was raised to release the decedent and placed against the side of the building, it was resting on its 12' side on the concrete walk and the 9' side was elevated and resting against the side of the building. Defendant contends that it is apparent that the door was changed from its original position, as indicated by paint smudges on the mullions *Page 355 
separating the casement windows, which were admittedly made by Elmer Cannon, an employee of the Thatcher Company, when he painted the outside of the door a day or two before the accident. Defendant's expert witness, Sheffield, testified that the paint smudges measured 9' 8" above the concrete walk. Based upon the location of the paint smudges, Sheffield calculated that, if the 9' width of the door were resting on the 2 x 4s, the door at the bottom would have been 7' 5" away from the wall; that, if the 12' length had been resting on the 2 x 4s, there would have been several inches between the top of the door and the paint smudges, and the door at the bottom would have been approximately 10" away from the wall; that the top of the door could not have actually rested against the building because of a 4" or 5" concrete sill at the bottom of the casement windows. Mr. White testified that he measured the door during the trial and its actual width was 9' 8". Mr. Gurrieri, an employee of the Thatcher Company, testified that he passed the door every day during the four weeks intervening between placing the door and the accident, and it was his observation that the door at the bottom was about a foot away from the building. There was also testimony that heavy machinery of the Thatcher Company was in operation during the time the fire door was stored against its "plate building" and trains of a nearby railroad passed daily.
Appellant contends that (1) the verdict was against the weight of the evidence; (2) that the court erred in denying defendant's motions for a dismissal at the completion of plaintiff's case and at the conclusion of the whole case and (3) that the doctrine ofres ipsa loquitur, upon which plaintiff relied for recovery, is not applicable.
The trial court submitted the case to the jury under the doctrine of res ipsa loquitur. Appellant argues "that action we are compelled to challenge. * * *." No exception was taken to the court's charge.
Defendant argues that, assuming the favorable inferences to which plaintiff is entitled from the testimony, "it is undisputable that some force other than that of gravity at the *Page 356 
time of the fatal accident, was necessarily applied to the door in order to cause it to fall * * *;" that "* * * falling in the manner described * * * the door had to be struck by an independent force and, incidentally, a very substantial one." In support of its contention that some independent force was applied to the door and caused it to topple over, defendant relies upon the testimony of its foreman Heffernan (who did not see the accident), that shortly after the accident he examined the door and discovered a definite round or circular imprint, approximately an inch deep, fourteen inches up from the bottom of the door, "about identical to the handle of the truck and that after the accident he `fixed it up.'" Heffernan admitted, however, that although he had passed the door frequently prior to the accident he had never examined it. There was contrary testimony of other witnesses who, having examined the door and the truck after the accident, stated that there were no marks on either indicating any contract between the truck and the door. The witness DuBeau stated that there was never any contact between the hand truck or the steel thereon with the door; that at no time was the truck nearer than three feet from the end of the door when the accident occurred. The witness Gabriel, called by defendant, testified that both he and DuBeau were pushing the truck. Gabriel was not interrogated, however, as to any of the circumstances of the occurrence.
It clearly appears that, if plaintiff's judgment is to be sustained, it is solely on the application of the doctrine ofres ipsa loquitur. The rule is aptly stated in Cicero v.Nelson Transportation Co., Inc., 129 N.J.L. 493 (Sup. Ct.
1943), wherein Mr. Justice Heher said:
"The maxim res ipsa loquitur is applicable. This rule, as applied to actions of negligence, is founded on the hypotheses that the instrumentality producing the injury was under the management or control of the defendant, and that, in the general experience of mankind, the event producing the injury does not happen unless the person in control has failed to exercise due care. In such circumstances, negligence may reasonably be inferred, and therefore the occurrence itself affords primafacie evidence of a want of due care." Cf. Oelschlaeger v.Hahne Co., 2 N.J. 490, 66 A.2d 861 (1949). *Page 357 
Defendant contends that under the proofs plaintiff failed to meet the required test under the stated rule; that the proofs do not show that the door after it was placed in position by its employees was in the sole control of the defendant, and in support thereof, points to the testimony of Elmer Cannon, an employee of the Thatcher Company who painted the door a day or so prior to the accident. The evidence is clear, however, that Cannon, although an employee of the Thatcher Company, had been assigned some time prior to the accident to Heffernan, foreman of the defendant corporation, and was working under his direction. Notwithstanding a lack of testimony indicating any control or the exercise of any control by the Thatcher Company, the court, with appropriate instructions, submitted the determination of that question to the jury.
Defendant contends further that, if plaintiff is entitled to recover, she must bring her case within the purview of the decisions dealing with injuries caused by falling objects; that in these cases the law of gravity operated and where recovery has been upheld, the occurrence itself warranted an inference of negligence by the party charged therewith sufficient to submit the issue to a jury for its determination; that here the undisputed manner in which the door fell proves that the law of gravity could not have operated; that if the law of gravity had been set in motion, the door would have slid out from the bottom; that, assuming that the door had remained in the position as originally placed by defendant, i.e.: resting on its 12' side on the 2 x 4s with the 9' side elevated against the building, leaving a space of approximately 10" between the door at the bottom and the wall of the building, it still would have required some force to be applied to the outside of the door if it were to topple over. Under the proofs here, it appears that the door in question was placed in its original position by defendant's employees, for the purpose of being subsequently installed in its appropriate place; that it remained there awaiting necessary hardware; that there was evidence to warrant an inference that it remained under the control and management of *Page 358 
the defendant; and that the jury could reasonably infer from the evidence that the door rested on the 12' side on the 2 x 4s, with the 9' side elevated and resting on or near the casement windows at the time of the accident. The jury might reasonably have rejected the hypothesis of the defendant's witness, Sheffield, that, based upon the position of the paint smudges, the door was resting on the 9' side, with the 12' side elevated, thereby making a distance of 7' 5" between the door at the bottom and the wall of the building, as, under such a situation, the concrete walk being only 10' in width, for all practical purposes would have been impassable. The occurrence was unusual and one that did not happen in the normal or ordinary course of things. The jury could have, as it obviously did, infer from the evidence that the falling of the door was not caused by any direct force applied to it. Such a conclusion would then raise these jury questions: Did defendant use the requisite degree of care in storing and maintaining the door in its position against the side of the plate building? Did the fact that the door, resting on the 2 x 4s with no bracing to support its position, warrant an inference of lack of due care on the part of the defendant? Did the operation of the heavy machinery of the Thatcher Company and trains of a nearby railroad set in motion vibrations that affected the position of the door and ultimately caused it to topple over, and did not defendant's failure to provide against such a factor warrant an inference of lack of due care by defendant?
Under the proofs, which encompass defendant's explanation of the occurrence, an inference of want of due care on the part of the defendant was raised, thus creating an issue for the determination of the jury. The jury obviously resolved the question of defendant's want of due care adversely to it. The issue being one that required the jury's determination, we will not substitute our judgment for theirs, particularly in view of the fact that there is no evidence indicating that their verdict was based upon mistake, passion or prejudice.
Our examination of defendant's other grounds of appeal convince us that they are without merit.
The judgment of the Superior Court is affirmed. *Page 359