SERINTO *v.* BORMAN FOOD STORES.

OPINION OF THE COURT.

1. NEGLIGENCE—STOREKEEPERS—SAFE CONDITION OF PREMISES—CUSTOMERS.

The storekeeper has the duty to provide reasonably safe aisles for customers and he is liable for injury resulting from an unsafe condition caused by the active negligence of himself and his employees or, if otherwise caused, where it is known to the storekeeper or is of such a character or has existed a sufficient length of time that he should have had knowledge of it.

2. EVIDENCE—NEGATIVE EVIDENCE.

Negative evidence is evidence to the effect that a circumstance or fact was not perceived.

3. SAME—NEGATIVE TESTIMONY.

The burden upon the party who relies upon negative testimony is that of showing the circumstances pertaining to the nonobservance, the witness' activities at the time, the focus of his attention, his acuity or sensitivity to the occurrence involved, his geographical location, the condition of his faculties, and all physical and mental attributes.

4. NEGLIGENCE—NEGATIVE TESTIMONY TEST.

Testimony, in action by customer against storekeeper for personal injuries sustained by falling on floor of store on broken

REFERENCES FOR POINTS IN HEADNOTES

[1] 38 Am Jur, Negligence §§ 131, 136.
[2–4] 29 Am Jur 2d, Evidence § 258; 30 Am Jur 2d, Evidence §§ 1092, 1093.
[5] 38 Am Jur, Negligence §§ 136, 332–334, 356, 358.
[6] 30 Am Jur 2d, Evidence §§ 1092, 1093; 38 Am Jur, Negligence §§ 285, 291.
[7] 20 Am Jur 2d, Courts § 233.
[8] 38 Am Jur, Negligence §§ 344, 345, 356.
[9] 38 Am Jur, Negligence § 358.

jar of mayonnaise, that during the 45 or 50 minutes she was in the store she heard no sound resembling a jar breaking *held*, not to meet the test for accepting negative testimony, and not to justify reasonable minds in inferring that the broken jar was on the floor before she entered the store.

5. Same—Mayonnaise on Store Floor Aisle—Notice—Question for Jury.

Evidence adduced in action by customer against storekeeper for personal injuries sustained by falling to floor of store aisle on broken jar of mayonnaise *held*, insufficient to raise a question for jury of defendant's notice or constructive notice of unsafe condition.

Separate Opinion.

Black, J.

6. Negligence—Negative Testimony Test—Burden of Proof.

*Testimony, in action by customer against storekeeper for personal injuries sustained by falling on floor of store on broken jar of mayonnaise, that during the 45 or 50 minutes she was in the store she heard no sound resembling a jar breaking does not meet the common-law test for accepting negative testimony, and does not justify reasonable minds to infer the broken jar was on the floor before she entered the store; however, the burden of proof in such cases should be revised so as to place the onus of producing evidence upon the party who is possessed of superior knowledge or opportunity for explanation of the causative circumstances, and where a retroactive declaration is inexpedient a court should apply the outworn rule to the present case and announce that it will feel free to apply another rule to transactions consummated in the future.*

Separate Opinion.

Brennan, J.

7. Negligence—Burden of Proof—Prospective Overruling.

*Prospective overruling of the common-law rule placing burden of proof upon the customer in a supermarket slip and fall case is judicial usurpation of the legislative power and there should be no case where it is "inexpedient" to apply the correct rule of law to a case at hand.*

DISSENTING OPINION.

T. M. KAVANAGH AND ADAMS, JJ.

8. NEGLIGENCE—QUESTION FOR JURY—EVIDENCE—STOREKEEPER—CUS-
TOMER—DANGEROUS PREMISES—MAYONNAISE.

> *Testimony, in action by customer against storekeeper for personal
> injuries sustained by falling on floor of store on broken jar
> of mayonnaise, that during the 45 or 50 minutes she was in
> the store she heard no sound resembling a jar breaking, that
> the cashier had a view of the aisle where the mayonnaise was
> spilled, and that plaintiff observed no customers in the aisle,
> held, sufficient to present a question of storekeeper's negli-
> gence upon which reasonable minds might differ, and is thus
> a question for the jury.*

DISSENTING OPINION.

O'HARA, J.

9. NEGLIGENCE—CONSTRUCTIVE NOTICE OF DANGEROUS CONDITION—
EVIDENCE.

> *Constructive notice of storekeeper as to existence of dangerous
> condition of premises is a question for jury in customer's
> action for injury sustained as a result of falling on broken
> jar of mayonnaise in store aisle.*

Appeal from Court of Appeals, Division 1, Lesin-
ski, C. J., and Watts and Quinn, JJ., reversing
Wayne; Streeter (Halford I.), J., presiding. Sub-
mitted December 5, 1967. (Calendar No. 45, Docket
Nos. 51,502, 51,503.) Decided May 6, 1968. Rehear-
ing denied September 25, 1968.

3 Mich App 183, affirmed.

Declaration by Catherine Serinto against Borman
Food Stores, a Michigan corporation, for injuries
sustained in a slip and fall in a store owned by
defendant. Derivative suit by Anthony Serinto.
Cases consolidated for trial. Verdict and judgment
for plaintiffs reversed by Court of Appeals. Plain-
tiffs appeal. Court of Appeals affirmed.

*Jerry P. D'Avanzo,* for plaintiffs.

*Cary, Be Gole, Martin, Bohall & Joselyn,* for defendant.

KELLY, J. A jury awarded plaintiff Catherine Serinto damages for an injury she received when she stepped and fell on a broken mayonnaise jar on the floor of defendant Borman Food Stores, and damages in her husband's suit for medical expenses, loss of services, and consortium. The trial court refused defendant's motion for directed verdict at the close of plaintiffs' proofs and, also, refused a motion for judgment notwithstanding the verdict.

The Court of Appeals set forth the issue by stating (3 Mich App 183, 188):

"The sole issue raised in these appeals is whether or not the plaintiffs proved a prima facie case of notice or knowledge as a matter of law. Stated another way, the question is: Was there enough evidence to raise a question of notice or constructive notice on the part of the defendant so that the matter should have been submitted to a jury for determination."

The sole question presented to this Court is: Did the Court of Appeals err in answering the above question in the negative, holding there was not enough evidence for the court to submit the question to the jury?

*Carpenter* v. *Herpolsheimer's Co.* (1937), 278 Mich 697 (syllabus 1), distinctly and concisely sets forth defendant's duty as a storekeeper, as follows:

"It is the duty of a storekeeper to provide reasonably safe aisles for customers and he is liable for injury resulting from an unsafe condition either caused by the active negligence of himself and his employees or, if otherwise caused, where known to

the storekeeper or is of such a character or *has existed a sufficient length of time that he should have had knowledge of it.*" (Emphasis ours.)

The only testimony offered to prove defendant's negligence was the testimony of plaintiff Catherine Serinto, and a resume of this testimony is set forth in 3 Mich App 183, 187, 188. The following facts are sufficient for this opinion:

Plaintiff Catherine Serinto entered defendant's store about 10:50 on Good Friday morning, March 27, 1959, with a shopping list she had prepared to take care of food and meat needs not only for Easter, but for the following week; after she had proceeded back and forth in 3 of the 5 shopping aisles, selecting articles from shelves so high she could not see from one aisle to another, she turned to enter the aisle where mayonnaise, pickles, et cetera, were displayed, and slipped and fell on a broken mayonnaise jar that was on the floor a foot or a foot and one half from the shelf; she did not see the jar or the mayonnaise on the floor before she slipped and fell; the floors in the store were "clean and clear" and the mayonnaise that was spilled on the floor from the broken jar "was a creamish white,  *  *  *  the same as the floor"; she was familiar with the sound of breaking glass or the sound that a glass jar would make if it fell on a hard floor; and she had been in the store about 45 to 50 minutes prior to the accident and during this time she did not hear anything resembling the sound of a jar breaking.

Appellants contend the testimony that, during the 45 or 50 minutes plaintiff Catherine Serinto was in the store, she had heard no sound resembling the jar breaking, would justify reasonable minds in inferring that the broken jar was on the floor before she entered the store, and "defendant should have known of its existence after 45 to 50 minutes, and that this failure constituted negligence."

Appellee calls attention to the fact that there was no testimony as to what extent the jar was broken before Mrs. Serinto's fall, and contends there was no testimony to sustain plaintiffs' contention that the jar fell from a shelf with a clearly audible smash; that the jar could have rolled off a shopping cart; could have fallen from a shelf a few inches from the floor; could have dropped from the hand of a customer who partially arrested its fall, yet have fallen far enough to crack the glass sufficiently to scatter the mayonnaise, and concludes with the statement: "To find constructive notice from this record, we have first to infer that the jar fell, second, infer that it made a noise, and finally, infer that the noise was such that Mrs. Serinto at some undefined distance, concentrating as she states she was upon her own shopping and her shopping list, would have heard it. * * * To permit a jury to infer notice from these things, is simply to permit speculation in the place of proof."

Plaintiffs rely on "negative evidence," defined as "evidence to the effect that a circumstance or fact was not perceived,"* to sustain the requirement that they proved constructive notice.

Granting due favorable view to plaintiff Catherine Serinto's testimony that she did not hear any sound, the absence of which was and is requisite to her theory of recovery, the fact remains that what she related in such regard constitutes valueless negation within the rule which this Court applied in *Dalton* v. *Grand Trunk Western Railroad Co.* (1957), 350 Mich 479. In *Dalton,* as here, no witness heard what the plaintiffs said did not occur (the timely blowing of the whistle of the oncoming train), yet the Court ruled unanimously that the plaintiffs had failed to make out a submissible case of causal neg-

* 4 Callaghan's Michigan Pleading & Practice (2d ed), § 36.193, p 27.

ligence. The reason given was the same as that which we now assign (pp 485, 486):

"The mere fact of nonhearing, standing alone, ordinarily has no probative value whatever as to the occurrence, or nonoccurrence, of the event. Many of us did not hear the bombs falling on Pearl Harbor. Thus the burden upon him who relies upon negative testimony is marked: he must show the circumstances pertaining to the nonobservance, the witness' activities at the time, the focus of his attention, his acuity or sensitivity to the occurrence involved, his geographical location, the condition of his faculties, in short, all those physical and mental attributes bearing upon his alertness or attentiveness at the time. We expressed this principle in *Lambert v. Minneapolis, St. Paul & Sault Ste. Marie R. Co.*, 209 Mich 107, 113, in which we held, per FELLOWS, J.:

" 'This analysis of the cases shows that in those relied upon by the plaintiff it was held that where the witnesses testified that they were listening, their attention was upon the train, its coming was upon their minds and they were paying heed to it, that then their testimony makes a case for the jury. This upon the theory that if they were listening, giving the train heed and attention, the probabilities are they would have heard the signals if they had been given.' "

This quotation was followed by an extended discussion of the authorities which have dealt with negative testimony and the circumstances under which such testimony will or will not make out a jury question of negligence and causation.

Plaintiff Catherine Serinto's testimony did not meet this negative testimony test and we do not agree with appellants' contention that her testimony that, during the 45 or 50 minutes she was in the store, she heard no sound resembling that of a jar breaking, would justify reasonable minds in infer-

ring that the broken jar was on the floor before she entered the store.

The Court of Appeals did not err in concluding that there was not sufficient evidence to justify submitting to the jury the question of defendant's notice of the existence of the broken mayonnaise jar on the floor of defendant's store.

Affirmed. Costs to appellee.

DETHMERS, C. J., and BLACK, SOURIS, and BRENNAN, JJ., concurred with KELLY, J.

BLACK, J. (*concurring*). Like Division 1 (3 Mich App 183), Justice KELLY has applied correctly our case law to plaintiffs' theory of recovery and has found that theory wanting. I accordingly vote with Justice KELLY to affirm.

There is more to be said though, the precedential future considered in conjunction with a conceded fact. That fact is that defendant had immediate notice of plaintiff Catherine Serinto's fall and of the condition which caused it, hence full opportunity of timely investigation and submission of proof stemming from that investigation. The following portion of the pretrial summary will suffice to point up my allusion:

"Defendant's version:

"On or about March 27, 1959, defendant operated a grocery store at 3647 Dix in the city of Lincoln Park. Defendant was informed by plaintiff about an accident or fall at about 11:15 a.m., on March 27, 1959. Defendant's manager inspected the area where the plaintiff, Catherine Serinto, claimed she had fallen and noted a broken jar of mayonnaise or salad dressing on the floor in an aisleway of defendant's store. The mayonnaise or salad dressing appeared fresh and smooth and was located in an area where the product itself was not shelved.

"Defendant claims that it had no notice or knowledge of the presence of the broken jar of mayonnaise or salad dressing on the floor prior to the plaintiff's alleged accident, that the jar had apparently been dropped by a customer shortly before plaintiff's alleged fall as the debris was located in an area where the product was not shelved and the product appeared fresh and smooth, that defendant exercised reasonable care in the maintenance of its premises and was, therefore, not negligent, and that the plaintiff, Catherine Serinto, was negligent. Defendant claims that plaintiff was negligent in her failure to see the presence of the broken jar of mayonnaise or salad dressing, in her failure to make proper observations of the floor or area as she proceeded through the aisleway, and in carelessly and negligently stepping into the broken jar of mayonnaise or salad dressing in an area which was lighted and protected for customers."

The application of our case law to common-law causes as at bar, involving as such causes do the rights of invitees commercial invitors have attracted for purchase and sale, has become most unfair when the scene of injury is the slickly smooth surface of a modern supermarket distinguished from the unevenly boarded floors of old-fashioned grocery stores and butcher shops. I think the burden-bearing feature of such case law should be revised, prospectively as Justice Cardozo suggested in 1931 shortly before he was nominated and confirmed to the Supreme Court (address of January 22, 1932; Vol. 55, report of New York State Bar Association, 262, 295–297) :*

---

* This passage was copied by the writer into our record of *Williams* v. *City of Detroit* (1961), 364 Mich 231, 282, 283. Sooner or later both eventful realism and stark necessity will force application of the doctrine generally upon *stare decisis*, much as has appeared recently in criminal jurisprudence. See *Linkletter* v. *Walker* (1964), 381 US 618 (85 S Ct 1731, 14 L Ed 2d 601); *Tehan* v. *United States, ex rel. Shott* (1966), 382 US 406 (86 S Ct 478, 15 L Ed 2d 436), and *Johnson* v. *New Jersey* (1966), 384 US 719 (86 S Ct 1772, 16 L Ed 2d 882).

"For such cases and others where a retroactive declaration is for any reason inexpedient, I find myself driven more and more to the belief that courts should be competent to follow the practice proposed by Mr. Wigmore in his suggestive little book 'The Problems of Law' and since espoused by others; they should apply the outworn rule to the case that is then at hand, and couple their judgment with the declaration that they will feel free to apply another rule to transactions consummated in the future."

The lead I would pursue (as to causes arising hereafter) was taken openly, last year, by the supreme court of New Jersey, *Wollerman* v. *Grand Union Stores, Inc.* (1966), 47 NJ 426, 429 (221 A2d 513, 514, 515):

"Here the hazard could have been caused by (1) carelessness in the manner in which the beans were piled and displayed; or (2) carelessness of an employee in handling the beans thereafter; or (3) carelessness of a patron. As to (1) and (2), defendant is chargeable whether or not it was aware of its employee's neglect. Defendant's knowledge is relevant only as to (3), but even there, since the patron's carelessness is to be anticipated in this self-service operation, defendant is liable, even without notice of the bean's presence on the floor, if (4) defendant failed to use reasonable measures commensurate with the risk involved to discover the debris a customer might leave and to remove it before it injures another patron.

"The customer is hardly in a position to know precisely which was the neglect. Overall the fair probability is that defendant did less than its duty demanded, in one respect or another. At least the probability is sufficient to permit such an inference in the absence of evidence that defendant did all that a reasonably prudent man would do in the light of the risk of injury his operation entailed. It is just, therefore, to place 'the onus of producing evidence upon the party who is possessed of superior knowl-

edge or opportunity for explanation of the causative circumstances.' *Kahalili* v. *Rosecliff Realty, Inc.,* 26 NJ 595, 606 (141 A2d 301, 307); *Bornstein* v. *Metropolitan Bottling Co.,* (1958) 26 NJ 263, 269 (139 A2d 404, 408)."

My vote to affirm is evidenced by endorsement of Justice KELLY'S opinion.

BRENNAN, J. (*concurring*). I have signed Justice KELLY'S opinion. This concurrence may be regarded as a dissent from the concurrence of Justice BLACK.

For myself, I regard the doctrine of prospective overrulement to be blatant judicial usurpation of the legislative power. I can think of no case where it is "inexpedient" to apply the correct rule of law to the case at hand.

The idea of shifting the burden of proof in a supermarket slip-and-fall case is just another nail in the coffin of common-law tort jurisprudence. It would advance the day when liability without fault becomes a reality. If courts are going to legislate mandatory shoppers' compensation, we ought at least to have the common courtesy to hold public hearings before the measure is passed to third reading.

ADAMS, J. (*dissenting*). Chief Judge LESINSKI in his dissenting opinion in *Serinto* v. *Borman Food Stores,* 3 Mich App 183, has analyzed the total fact situation in this case and the controlling principle of law regarding the sufficiency of evidence as set forth in *Sparks* v. *Luplow* (1963), 372 Mich 198, 202. I agree with his opinion.

This Court does not have the benefit of Catherine Serinto's appearance on the witness stand by means of which to judge her testimony. When the accident occurred Mrs. Sertino was 32 years of age.

The acuity of her hearing, not apparent on the record before us, would be readily apparent to the jury. Her alertness to activities about her could also be judged by the jury. Whatever the jurors' observations of her hearing and her mental alertness may have been, certainly those observations were proper to their decision as well as the other relevant facts— that the accident occurred on Good Friday morning when the store was almost empty of customers, that she did not notice any customers in the aisleway in which she fell, that she did not observe any stock boys on the floor, that she was in the store for some 45 to 50 minutes and heard no sound of breaking glass, and, finally, that a cashier had a view of the aisle. In *Sparks, supra,* a unanimous Court upheld a verdict for the plaintiff. This Court stated (pp 202, 203):

"Might reasonable minds differ as to whether defendant Kresge Company was guilty of negligence in not seeing and removing the banana from the floor prior to plaintiff's fall, in view of the store manager's testimony that he had been down the aisle several times that afternoon, the last time approximately 5 minutes before the accident, and in view of his testimony that if the janitor had performed his sweeping duties in the usual manner, the floor would have been swept some time within a half hour before the accident? Might not reasonable minds infer the failure to sweep, together with the failure on the part of the store manager and defendant Luplow to see the banana, which was admittedly there and may have been there long enough for them to have found it in the exercise of ordinary care, constituted negligence?"

Applied to this case, the above quotation from *Sparks* might be paraphrased somewhat as follows:

Might reasonable minds differ as to whether defendant Borman Food Stores Company was guilty

of negligence in not seeing and removing the mayonnaise from the floor prior to plaintiff's fall, in view of Mrs. Serinto's testimony that she heard no sound of breaking glass during the 45 or 50 minutes she was in the store, that the cashier had a view of the aisle where the mayonnaise was spilled, and that Mrs. Serinto observed no customers in the aisle? Might not reasonable minds infer that the failure on the part of the cashier to see the mayonnaise, which was admittedly there and may have been there long enough to have been found in the exercise of ordinary care, or the failure on the part of stock boys to patrol the aisles, constituted negligence?

The negative evidence in this case is only a part of the total facts. Those facts—sufficient to satisfy the trial judge—viewed in the light most favorable to plaintiffs, are as favorable to these plaintiffs as were the facts in *Sparks,* in fact more so, because (unlike the silent—no noise when falling—banana in *Sparks*), the jars of mayonnaise, a product for sale (in *Sparks* the banana was not), were known to be there by defendant's employees and would make a noise when falling on a hard floor. It was foreseeable that such merchandise, in glass containers, might become broken.

The judgment of the Court of Appeals should be reversed and the judgment of the circuit court affirmed.

T. M. KAVANAGH, J., concurred with ADAMS, J.

O'HARA, J. (*dissenting*). I am constrained to agree with Mr. Justice ADAMS. I regard myself as bound by his cited authority of *Sparks* v. *Luplow* (1963), 372 Mich 198, and the additional authority of *Lipsitz* v. *Schechter* (1966), 377 Mich 685 (1 NCCA

4th 421). In *Lipsitz* it was stipulated that there was no actual notice, and that the question of notice of the alleged defective condition of the premises was limited to constructive notice. The same could have been done here.

It is not contended that defendant here had actual notice.

However, I cannot disregard the language in *Lipsitz,* at p 689:

"A jury could find that the defendants would have had notice of a defective condition of the screen if there had been reasonable supervision."

In the case at bar defendant offered no proof. There was no evidence of any kind of supervision in the record. Hence, I do not see how it was possible to determine, as a matter of law, whether supervision was reasonable.

Consequently, I concur with Justice Adams' result.