872 F.2d 1024
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Timothy BOOMER and Mamie Boomer, Plaintiffs-Appellants,
v.
NORTHWEST AIRLINES, Defendant-Appellee.
 No. 88-1726.
 United States Court of Appeals, Sixth Circuit.
 April 6, 1989.
 
 Before BOYCE F. MARTIN, Jr. and RYAN, Circuit Judges, and JOHN W. POTTER, District Judge.*
 RYAN, Circuit Judge.
 
 
 1
 Plaintiff appeals the order of the district court directing the verdict for defendant in this personal injury action. We conclude that the district court did not err by directing a verdict for defendant and we therefore affirm.
 
 I.
 
 2
 Plaintiff Timothy Boomer was employed by Northwest Foods, Inc. as a truck driver on August 29, 1985. At approximately 8:00 a.m., plaintiff arrived at the parking lot of the Northwest Airlines freight terminal building at Metropolitan Airport near Detroit to make a delivery. As he was walking towards the freight office, he slipped and fell in a puddle of oily fluid located approximately thirty feet from the freight office in defendant's parking lot. As a result of the fall, he sustained injuries.
 
 
 3
 Plaintiff subsequently filed a complaint in the Circuit Court for Wayne County, and defendant removed to the district court on the basis of diversity of citizenship. The case came to trial, and plaintiff testified to the above described facts. However, on cross-examination, plaintiff admitted that he had no way of knowing how long the fluid had been present in the parking lot nor how it got there. Plaintiff also presented the depositions of Leonard Neudecker and Ralph Cucuru, both of whom were agents of defendant. Both stated in their depositions that there was no way of determining how long the substance had been on the parking lot. Neudecker explained that he generally arrived between 8:00 a.m. and 9:00 a.m. each morning, and that he did not see the stain when he had walked in on the morning of August 29, 1985. Moreover, Cucuru stated that although he could not say how long the stain had been there, he considered it to be "fresh" because "it was very fluid and clean looking fluid." Plaintiff presented no other evidence indicating how long the spill had been present on the surface of the parking lot.
 
 
 4
 At the close of plaintiff's case, defendant moved for a directed verdict. The court granted defendant's motion and stated:
 
 
 5
 I am going to direct a verdict. I do not see any liability in this case. There has been nothing in this case that I have seen nor has any law been supported or given to me that shows when the oil was there, how long it was there, whether or not reasonable inspection would or should have discovered it. The only testimony as to when the oil was first there was when your client saw it and walked into it. There is no indication that any kind of inspection whatsoever, hourly, every 15 minutes, every 10 minutes would have made a disclosure of this particular oil. It's just vacant as to what testimony, just zero as to that testimony. There is nothing in here. What we have is a fall and that is all you have proven with a foreign substance and the law says you must prove more than a fall.
 
 
 6
 The district court subsequently entered an order granting defendant's motion for directed verdict, and this appeal followed.
 
 II.
 
 7
 Because jurisdiction in this case arises from diversity of citizenship, we must apply the law of Michigan, the state in which the action arose. Erie Railroad v. Thomkins, 304 U.S. 64 (1938); Bailey v. V & O Press Co., Inc., 770 F.2d 601, 604 (6th Cir.1985). It is well settled under Michigan law that a landowner must provide reasonably safe premises for invitees.
 
 
 8
 "It is the duty of a storekeeper to provide reasonably safe aisles for customers and he is liable for injury resulting from an unsafe condition either caused by the act of negligence of himself and his employees or, if otherwise caused, where known to the storekeeper or is of such a character or has existed a sufficient length of time that he should have had knowledge of it."
 
 
 9
 Serinto v. Borman Food Stores, 380 Mich. 637, 640-41 (1968) (quoting Carpenter v. Herpolsheimer's Co., 278 Mich. 697 (syllabus 1) (1937)) (emphasis in original).
 
 
 10
 In this case, it is undisputed that plaintiff failed to present evidence indicating that the unsafe condition, the oil spill, was caused by any of defendant's agents. Further, it is also undisputed that the existence of the unsafe condition was not known to any of defendant's agents. Therefore, the only remaining question is whether the oil spill had existed for a long enough period of time that defendant reasonably should have discovered it.
 
 
 11
 Plaintiff argues that "there is reason to believe that the unsafe condition had existed at least long enough for the hazardous material to seep into the ground, causing a stain." However, as plaintiff concedes, an identical argument was rejected by the Michigan Court of Appeals in McCune v. Meijer, Inc., 156 Mich.App. 561 (1986). In McCune, plaintiff argued that because the oil stain was larger than the actual puddle itself, "the stain must have resulted from the evaporation of the oil spill. Given the naturally slow rate of evaporation, plaintiff argues that the oil spill must have been of a long-standing duration, and thus defendant should have been aware of its existence." Id. at 562-63. The court rejected this argument, stating that "[p]laintiff's evaporation theory was completely unsupported by any expert testimony, either by deposition or affidavit, and thus amounts to no more than sheer speculation and conjecture." Id. at 563. See also Whitmore v. Sears, Roebuck & Co., 89 Mich.App. 3, 10 (1979) ("there is no testimony that the substance had been in the parking lot for a considerable amount of time, evidence from which the inference could be drawn that Sears should have known of its presence.... [T]he substance was undisputably at the spot where plaintiff fell, but how and where it came there were matters of conjecture.").
 
 
 12
 In this case, as in McCune and Whitmore, plaintiff presented no evidence demonstrating when the spill originated and how long it had been present on the surface of the parking lot. Plaintiff's cites the Michigan Court of Appeals decision in Little v. Borman Food Stores, Inc., 33 Mich.App. 609, 613 (1971), in which the court held that although "[t]here was no evidence that affirmatively indicated that the ice had been deposited recently, ... we cannot say that a reasonable man could not have concluded that the ice existed for a long enough period that defendant should have had notice of it." See also Ritter v. Meijer, Inc., 128 Mich.App. 783, 787 (1983). It is important to remember that in the exercise of diversity jurisdiction, we are bound by the determinations of the state's highest court. Decisions of intermediate state appellate courts, while accorded weight, are not binding on us "if convinced by other data that the state's highest court would determine otherwise." Bailey, 770 F.2d at 604. Neither Little nor Ritter cite the Michigan Supreme Court's decision in Serinto. Neither case was decided in accordance with the mandate of the Michigan Supreme Court in Serinto that a plaintiff must affirmatively demonstrate that the unsafe condition existed for a sufficient period of time that defendant should have reasonably discovered it. In Serinto, plaintiff had slipped on a broken jar of mayonnaise. She testified that she had been in the store approximately 45 to 50 minutes, and during that period of time had not heard the sound of a breaking jar. The court rejected plaintiff's "negative evidence" as not "justify[ing] reasonable minds in inferring that the broken jar was on the floor before she entered the store." 380 Mich. at 643-44. It is therefore clear that the burden of affirmatively establishing the period of time during which the unsafe condition has existed falls squarely upon plaintiff. For this reason, we decline to follow the decisions to the contrary in Little and Ritter. Rather, we adopt the decision of the Michigan Court of Appeals in McCune because it correctly reflects the rule set forth by the Michigan Supreme Court in Serinto.
 
 
 13
 Finally, plaintiff argues that Michigan has sub silentio adopted the so-called Wollerman doctrine which shifts the burden of proof to defendant to show when the unsafe condition arose. See Wollerman v. Grand Union Stores, Inc., 47 N.J. 426, 221 A.2d 513 (1966). Plaintiff relies upon the concurring opinion of Justice Black in Serinto advocating the adoption of Wollerman in Michigan, 380 Mich. at 646-47 (Black, J., concurring), and the Michigan Court of Appeals decisions in Little and Ritter. This argument is without merit because Michigan Supreme Court clearly considered and rejected Wollerman when it declined to adopt Justice Black's views in Serinto. No subsequent supreme court case has questioned this decision. Thus, it is plain that Michigan does not accept the Wollerman doctrine.
 
 
 14
 Because plaintiff did not meet the burden of producing evidence that the oil spill existed for a sufficient amount of time that defendant could reasonably be expected to have discovered it, we hold that the district court was correct in granting defendant's motion for directed verdict. Its decision is therefore AFFIRMED.
 
 
 
 *
 The Honorable John W. Potter, United States District Judge for the Northern District of Ohio, sitting by designation