**Pamela GRESKO and Steve Gresko, Plaintiffs,**

v.

**SOUTHLAND JOINT VENTURE, Rouse Southland Management Corporation, and John Doe Snow Removal Company, Defendants.**

Civ. A. No. 93–74256.

United States District Court, E.D. Michigan, Southern Division.

Aug. 8, 1994.

Kenneth A. Stern, Stern & Associates, Southfield, MI, for plaintiffs.

Berry M. Kelman, Ellen Nowicki, Gofrank & Kelman, Southfield, MI, for defendants.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

GADOLA, District Judge.

This matter is before the court on defendants' motion for summary judgment pursuant to Rule 56(b) of the Federal Rules of Civil Procedure. Plaintiffs have brought this diversity action against defendants alleging negligence in connection with a slip and fall on their premises. In their motion, defendants contend that they had no notice of any dangerous condition, and thus had no duty to make the area safe. For the reasons discussed below, the court will grant defendants' motion.

### I. Background

On February 1, 1992, plaintiff Pamela Gresko went shopping at the Southland Shopping Center in Taylor, Michigan. When she left the shopping center at approximately 5:00 p.m., she slipped and fell on a patch of snow covered ice in the parking lot. Plaintiff Steve Gresko is Pamela Gresko's husband, and he is seeking recovery of damages due to loss of consortium.

The shopping mall is owned by defendants Southland Joint Venture, a Maryland partnership, and Rouse Southland Management Corporation ("Southland Management"), a Maryland corporation. Defendant Southland Management is responsible for operating and managing the shopping mall, as well as providing for snow removal.

Plaintiffs allege that they were injured due to defendants' failure to maintain their premises in a safe condition. Defendants contend that they are not liable for plaintiffs' injuries because they had no notice of any dangerous condition that may have existed on their premises. As a result, defendants have brought this motion for summary judgment.

### II. Standard of Review

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984) (citation omitted) (quoting Black's Law Dictionary 881 (6th ed.1979)). The court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962); *Bender v. Southland Corp.*, 749 F.2d 1205, 1210–11 (6th Cir.1984).

The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *See Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 861 (6th Cir.1986). The initial burden on the movant is not as formidable as some decisions have indicated. The moving party need not produce evidence showing the absence of a genuine issue of material fact. Rather, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once the moving party discharges that burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. Fed.R.Civ.P. 56(e); *Gregg*, 801 F.2d at 861.

To create a genuine issue of material fact, however, the nonmovant must do more than present some evidence on a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986),

There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

(Citations omitted). *See Catrett,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The standard for summary judgment mirrors the standard for a directed verdict under Fed.R.Civ.P. 50(a). *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. Consequently, a nonmovant must do more than raise some doubt as to the existence of a fact; the nonmovant must produce evidence that would be sufficient to require submission to the jury of the dispute over the fact. *Lucas v. Leaseway Multi Transp. Serv., Inc.,* 738 F.Supp. 214, 217 (E.D.Mich.1990), *aff'd,* 929 F.2d 701 (6th Cir.1991). The evidence itself need not be the sort admissible at trial. *Ashbrook v. Block,* 917 F.2d 918, 921 (6th Cir.1990). However, the evidence must be more than the nonmovant's own pleadings and affidavits. *Id.*

### III. Analysis

■ The Michigan Supreme Court has adopted the definition of the duty owed by a premises owner to an invitee promulgated by the *Restatement (Second) of Torts* § 343. *Riddle v. McLouth Steel Corp.,* 440 Mich. 85, 93, 485 N.W.2d 676 (1992); *Quinlivan v. Great Atlantic & Pacific Tea Co., Inc.,* 395 Mich. 244, 235 N.W.2d 732 (1975). Section 343 reads in full as follows:

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and (c) fails to exercise reasonable care to protect them against the danger.

*Id.* Specifically, in a slip and fall accident case, Michigan courts require that a plaintiff show either that a defendant caused an unsafe condition by the "active negligence of himself or his employees" or, where otherwise caused, that the unsafe condition was known to the defendant or was of such a character or had existed a sufficient length of time that he should have had notice of the condition. *Serinto v. Borman Food Stores,* 380 Mich. 637, 640–41, 158 N.W.2d 485 (1968); *see Whitmore v. Sears, Roebuck & Co.,* 89 Mich.App. 3, 5, 279 N.W.2d 318 (1979) (plaintiff must show defendant created unsafe condition or had notice thereof).

■ In cases where the duty owed to invitees "pertains to ice and snow accumulations," Michigan requires "that reasonable measures be taken within a reasonable time after an accumulation of ice and snow to diminish the hazard of injury to the invitee." *Quinlivan,* 395 Mich. at 261, 235 N.W.2d 732. To establish liability under this doctrine, a plaintiff must prove that the defendant's act of removing ice and snow introduced a new element of danger not previously present. *Zielinski v. Szokola,* 167 Mich.App. 611, 615, 423 N.W.2d 289 (1988).

■ Defendants claim that they deserve summary judgment because plaintiffs have failed to present any evidence showing that the patch of ice in the parking lot was either caused by defendants or that there was any notice to defendants as to the existence of the patch of ice prior to the accident. Furthermore, defendants rely upon climatological evidence that shows that only a trace amount of snow had fallen in the early morning of February 1, 1992.

In response, plaintiffs contend that the icy patch in the parking lot was caused by defendants' negligence and that they had implied notice of this unsafe condition. Plaintiffs rely heavily upon the deposition testimony of Cindy Neblett, one of defendants' security officers who responded to the accident.[1] She alleges that ice occasionally forms in the parking lot as a result of the refreezing of run-off water from the melting of large piles of snow ("wind rows") created by defendants

---

1. Plaintiffs secondarily rely upon the testimony of another security guard, Kim Faison.

during the plowing of the parking lot. Neblett states that on the day of the accident there was a wind row on the parking aisle across from where the plaintiff fell. Furthermore, Neblett states that over her sixteen years as a security officer for Southland Mall, she and other officers and staff have been aware of the problem caused by the refreezing of run-off water from such snow piles. However, Neblett does not state that the particular patch of ice in question was created by run-off from the nearby wind row.

Based upon Neblett's testimony, plaintiffs contend that the evidence shows that through their negligent snow removal operations in the parking lot, defendants created an unsafe condition that led to plaintiffs' injury. In addition, plaintiffs contend that there exists a material question of fact concerning whether defendants took reasonable measures in clearing the parking lot to reduce the hazard of injury to their invitees.

The court disagrees. Plaintiffs have failed to bring forward sufficient facts to defeat defendants' motion for summary judgment. Plaintiffs have failed to demonstrate that there still exist genuine issues of material fact concerning the reasonableness of defendants' snow removal operations, whether those operations caused an unsafe condition, and whether defendants had prior knowledge of that condition.

### A. Lack of Evidence to Support Notice or Causal Connection

Plaintiffs argue that defendants had actual notice of the conditions surrounding the injury. Plaintiffs also argue that defendants had constructive notice of the conditions because the ice patch was a result of the affirmative actions taken by defendants in clearing the parking lot of snow and creating the resultant wind rows. Plaintiffs rely only upon Neblett's claims that the security and maintenance staff were aware of the *potential* for run-off water from the wind rows which may eventually freeze with a drop in temperature. Such evidence is insufficiently probative at best.

To conclude that knowledge of the potential for the refreezing of run-off water imputes notice of the ice patch that caused the injury requires the grand assumption that the ice patch was necessarily caused by the alleged wind row run-off. Wind rows were present throughout the parking lot, yet, outside of the small ice patch in question, the parking lot was clear. Apparently, the other wind rows did not melt when faced with the same weather conditions.[2]

Plaintiffs' contention that the ice patch was caused by the melting of the wind row is simply a theory based upon speculation rather than upon any evidence. Neither the testimony of Neblett nor the photographs taken immediately after the accident show that the ice patch was in any way connected with, or resulted from, the refreezing of run-off water from melting wind rows. Arguably, a number of varying scenarios could be imagined that could have been responsible for the ice patch. Finally, the unrefuted climatological data presented by defendants shows that no measurable snowfall occurred at the time of the accident or within a reasonable time prior to it such that defendants would have been required to take further reasonable precautions. Instead, plaintiffs base their claims solely upon the so called "wind row theory" which is unsupported by the evidence. As a result, plaintiffs' cause of action is based upon sheer speculation.

The court finds that plaintiffs have failed to present any facts showing that the accident was caused by the refreezing of run-off from snow piles created by defendants. Viewing the facts in the light most favorable to the plaintiffs, the court finds that no material issues remain in dispute. As a result, the court will grant defendants' motion for summary judgment.

### B. Natural Circumstances Preclude Liability

Even assuming that plaintiffs could demonstrate that the ice patch was caused by the melting of a wind row, such melting was the result of natural circumstances and not the fault of defendants. The court finds the

---

**2.** Defendants had taken precautions to protect from injury due to run-off's should they occur. According to Neblett, the security staff drove around the parking lot in search of ice patches, in which case they would notify maintenance staff to salt the area.

case of *Zielinski v. Szokola,* 167 Mich.App. 611, 423 N.W.2d 289 (1988) particularly instructive. In *Zielinski,* a Michigan appeals court affirmed a lower court's grant of summary disposition to a defendant property owner in a slip and fall case involving ice and snow. In that case, a patron leaving defendant's barber shop slipped and fell on a public sidewalk in an area that defendant had salted for nearly thirty years, resulting in pits in the sidewalk.[3] The court found that the application of salt to an icy surface did not create a new hazard but, rather, alleviated, albeit temporarily, a hazard which already existed. *Id.* at 621, 423 N.W.2d 289. The court held that liability should not attach merely because the powerful forces of nature reassert themselves and a salted surface refreezes. *Id.*

Similarly, this court does not view clearing a parking lot of snow as creating a hazard. Rather, it alleviates a hazard that already existed. Because the forces of nature reasserted themselves and may have caused the plowed snow to melt and refreeze does not merit the attachment of liability.[4]

*Zielinski* is particularly significant as it strongly criticized an earlier Michigan case, *Clink v. Steiner,* 162 Mich.App. 551, 413 N.W.2d 45 (1987), which offers similar factual circumstances to the case at bar. In *Clink,* a Michigan appeals court reversed a lower court's grant of summary disposition to a defendant property owner in a slip and fall case involving ice and snow. In that case, a newspaper delivery man slipped on defendant's driveway after it had been shoveled and cleared in an area where it was noticed that run-off water from piles of snow had frozen. The court found that where the facts showed that defendant had adequately shoveled, a jury question still existed as to whether defendant had taken reasonable measures under *Quinlivan* by properly salting or sanding his driveway in order to avoid the refreezing of run-off. *Id.* at 556–57, 413 N.W.2d 45.

The *Zielinski* court strongly criticized the holding in *Clink* as well as a similar anomalous case for their almost exclusive reliance on *Quinlivan,* even though those cases had "strayed significantly from the reasonable holding in *Quinlivan.*" *Zielinski* 167 Mich. App. at 619, 423 N.W.2d 289 (citing *Clink* and *Lundy v. Groty,* 141 Mich.App. 757, 367 N.W.2d 448 (1985)). The court noted that in *Quinlivan* the Michigan Supreme Court merely held that liability might arise for a supermarket's failure to clean its parking lot for several days following a snowfall. *Id.* The *Zielinski* court indicated that the decision in *Clink* had gone too far in imposing liability in slip and fall cases involving the accumulation of snow.

This court is similarly persuaded, and follows the reasoning in *Zielinski.* Assuming a melting and refreezing of run-off water from the snow piles in this case, defendants cannot be held liable merely because the powerful forces of nature reassert themselves and a cleared surface refreezes. As a matter of Michigan law, defendants are not liable when their reasonable precautions are perverted by mother nature. Michigan courts have correctly foreseen that such an anomalous result would unnecessarily punish safety-conscious business operators and would fall outside the range of reasonable precautions required by *Quinlivan.* Accordingly, on this alternative basis, the court will grant defendants' motion for summary judgment.

### C. Conclusion

Plaintiffs have failed to present facts indicating that the accident was caused by the refreezing of run-off from snow piles created by defendants. Moreover, should plaintiffs have presented such facts, defendants are

---

**3.** The court recognizes that in *Zielinski,* the court was presented with a "hybrid situation" as it involved a business invitee who was injured on a public sidewalk abutting the business. *Zielinski,* 167 Mich.App. at 620, 423 N.W.2d 289. In any event, however, the *Zielinski* court chose to address that case under the *Quinlivan* standard with reference to other slip and fall cases that mirror the case at bar. *Id.* at 618–20, 423 N.W.2d 289.

**4.** The court is guided by the position of the Michigan court of appeals that it is inappropriate for safety-conscious businesses, already taking prudent, protective, steps to fear liability each time the forces of nature reassert themselves. *Zielinski,* 167 Mich.App. at 618–20, 423 N.W.2d 289.

not liable merely because the powerful forces of nature reassert themselves. Viewing the facts in the light most favorable to the plaintiffs, the court finds that no material issues remain in dispute. As a result, the court will grant defendants' motion for summary judgment.

### ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that defendants' motion for summary judgment is **GRANTED**. Plaintiffs' complaint is **DISMISSED** with prejudice.

**SO ORDERED.**