*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DANIEL ARVIDSON,

       Plaintiff-Appellant,

v

POLLY'S FOOD SERVICES, INC., and HOME CITY ICE COMPANY,

       Defendants-Appellees.

UNPUBLISHED
December 3, 2019

No. 346938
Jackson Circuit Court
LC No. 17-002801-NO

Before: O'BRIEN, P.J., and GADOLA and REDFORD, JJ.

PER CURIAM.

Plaintiff Daniel Arvidson appeals as of right the trial court's grant of summary disposition to defendants under MCR 2.116(C)(10). We affirm.

## I. STATEMENT OF FACTS

On August 25, 2016, plaintiff visited defendant Polly's Food Service, Inc.'s (Polly's) grocery store in Brooklyn, Michigan. Just shortly after entering the store, while walking toward the dairy department to pick up some yogurt, he slipped and fell in a puddle of water in the aisle by a freezer that contained bags of ice stocked by persons hired by defendant Home City Ice Company (HCI). Plaintiff described the puddle as six to eight feet in size, and he described the lighting in the area as adequate. Plaintiff sued defendants alleging that they breached duties causing him to suffer a serious injury to his knee. The trial court ruled that the puddle of water was open and obvious and no special aspects existed. The trial court granted both defendants summary disposition.

## II. STANDARD OF REVIEW

We review de novo a trial court's summary disposition decision to determine if the moving party was entitled to judgment as a matter of law. *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 5; 890 NW2d 344 (2016). We also review de novo a trial court's decision regarding whether a party owed a duty to another. *Fultz v Union-Commerce Assoc*, 470 Mich 460, 463; 683 NW2d 587 (2004). A motion brought under MCR 2.116(C)(10) tests the factual support of a

plaintiff's claim, and is reviewed by considering the pleadings, admissions, and other evidence submitted by the parties in a light most favorable to the nonmoving party. *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008). Summary disposition is proper if there is "no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Id*. A genuine issue of material fact exists when "reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008). We consider the evidence that was properly presented to the trial court in deciding the motion. *Peña v Ingham Co Rd Comm*, 255 Mich App 299, 310; 660 NW2d 351 (2003). As explained in *Peña*,

> The moving party has the initial burden of supporting its position with documentary evidence, but once the moving party meets its burden, the burden shifts to the nonmoving party to establish that a genuine issue of disputed fact exists. Where the burden of proof at trial on a dispositive issue rests on a nonmoving party, the nonmoving party may not rely on mere allegations or denials in pleadings, but must go beyond the pleadings to set forth specific facts showing that a genuine issue of material facts exists. The moving party is entitled to a judgment as a matter of law when the proffered evidence fails to establish a genuine issue regarding any material fact. [*Id*. (quotation marks and citations omitted).]

## III. ANALYSIS

Plaintiff first argues that the trial court erred because the condition on Polly's premises was not open and obvious since he and others did not see it before he fell. We disagree.

The threshold issue in a premises liability action is whether the defendant owed the plaintiff a duty. *Fultz*, 470 Mich at 463. "Duty is essentially a question of whether the relationship between the actor and the injured person gives rise to any legal obligation on the actor's part for the benefit of the injured person." *Moning v Alfono*, 400 Mich 425, 438-439; 254 NW2d 759 (1977). "In a premises liability action, a plaintiff must prove the elements of negligence: (1) the defendant owed the plaintiff a duty, (2) the defendant breached that duty, (3) the breach was the proximate cause of the plaintiff's injury, and (4) the plaintiff suffered damages." *Benton v Dart Props, Inc*, 270 Mich App 437, 440; 715 NW2d 335 (2006) (citation omitted). "The duty owed to a visitor by a landowner depends on whether the visitor was a trespasser, licensee, or invitee at the time of the injury." *Sanders v Perfecting Church*, 303 Mich App 1, 4; 840 NW2d 401 (2013).

In this case, the parties and the trial court agreed that plaintiff had invitee status. In *Stitt v Holland Abundant Life Fellowship*, 462 Mich 591, 596-597; 614 NW2d 88 (2000), our Supreme Court explained the requisite standard of care owed by a landowner to an invitee as follows:

> An "invitee" is a person who enters upon the land of another upon an invitation which carries with it an implied representation, assurance, or understanding that reasonable care has been used to prepare the premises, and make it safe for the invitee's reception. The landowner has a duty of care, not only to warn the invitee of any known dangers, but the additional obligation to also make the

premises safe, which requires the landowner to inspect the premises and, depending upon the circumstances, make any necessary repairs or warn of any discovered hazards. Thus, an invitee is entitled to the highest level of protection under premises liability law.

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if the owner: (a) knows of, or by the exercise of reasonable care would discover, the condition and should realize that the condition involves an unreasonable risk of harm to such invitees; (b) should expect that invitees will not discover or realize the danger, or will fail to protect themselves against it; and (c) fails to exercise reasonable care to protect invitees against the danger. [Quotation marks and citations omitted.]

Michigan law, however, does not charge landowners "with guaranteeing the safety of every person who comes onto their land." *Hoffner v Lanctoe*, 492 Mich 450, 459; 821 NW2d 88 (2012) (citation omitted). Both landowners and visitors must "exercise common sense and prudent judgment when confronting hazards on the land." *Id*. Michigan law does not require perfection from landowners and requires that visitors take personal responsibility to take reasonable care for their own safety. *Id*. at 460.

A landowner has no duty to warn or protect a visitor from open and obvious dangers "because such dangers, by their nature, apprise an invitee of the potential hazard, which the invitee may then take reasonable measures to avoid." *Id*. at 460-461 (citations omitted). In *Lugo v Ameritech Corp, Inc*, 464 Mich 512, 516; 629 NW2d 384 (2001), our Supreme Court clarified that "the open and obvious doctrine should not be viewed as some type of 'exception' to the duty generally owed invitees, but rather as an integral part of the definition of that duty."

Whether a particular hazard is open and obvious involves an objective standard; a hazard is open and obvious if "an average person with ordinary intelligence would have discovered it upon casual inspection." *Hoffner*, 492 Mich at 461 (citations omitted). A landowner will remain liable if "special aspects of a condition make even an open and obvious risk unreasonable." *Id*. When an open and obvious danger has special aspects that make it unreasonably dangerous notwithstanding its open and obvious character, the landowner must still take reasonable steps to protect the invitee. *Id*. In *Hoffner*, our Supreme Court specified two instances where an otherwise open and obvious hazard may have special aspects that could give rise to liability:

when the danger is *unreasonably dangerous* or when the danger is *effectively unavoidable. In either circumstance*, such dangers are those that give rise to a uniquely high likelihood of harm or severity of harm if the risk is not avoided and thus must be differentiated from those risks posed by ordinary conditions or typical open and obvious hazards. Further, we have recognized that neither a common condition nor an avoidable condition is uniquely dangerous. Thus, when a plaintiff demonstrates that a special aspect exists or that there is a genuine issue of material fact regarding whether a special aspect exists, tort recovery may be permitted if the defendant breaches his duty of reasonable care. [*Id*. at 463 (quotation marks and citations omitted, emphasis in the original).]

Our Supreme Court reiterated the principle previously articulated in *Lugo*, that the open and obvious doctrine cuts off liability if the condition creates a risk of harm only because the invitee fails to discover the condition or realize its danger, and only if the risk of harm remains unreasonable despite its obviousness must a landowner take reasonable precautions. *Id.* at 463. Our Supreme Court explained that, for a hazard to be "effectively unavoidable" and excepted from the application of the open and obvious doctrine, the plaintiff must have no choice but to encounter the hazard. *Id.* at 468. Our Supreme Court clarified:

> Accordingly, the standard for "effective unavoidability" is that a person, for all practical purposes, must be required or compelled to confront a dangerous hazard. As a parallel conclusion, situations in which a person has a choice whether to confront a hazard cannot truly be unavoidable, or even effectively so. [*Id.* at 468-469.]

> \* \* \*

> [W]hen confronted with an issue concerning an open and obvious hazard, Michigan courts should hew closely to the principles previously discussed. It bears repeating that exceptions to the open and obvious doctrine are *narrow* and designed to permit liability for such dangers only in *limited*, extreme situations. Thus, an "unreasonably dangerous" hazard must be just that—not just a dangerous hazard, but one that is *unreasonably* so. And it must be *more than* theoretically or retrospectively dangerous, because even the most unassuming situation can often be dangerous under the wrong set of circumstances. An "effectively unavoidable" hazard must truly be, for all practical purposes, one that a person is required to confront under the circumstances. A general interest in using, or even a contractual right to use, a business's services simply does not equate with a compulsion to confront a hazard and does not rise to the level of a "special aspect" characterized by its *unreasonable risk of harm*. [*Id.* at 472-473 (citations omitted, emphasis in the original).]

In this case, plaintiff's testimony established that, before he fell, he gazed in the direction of the dairy department and proceeded toward it. He did not watch where he walked. He testified that, when he slipped and landed on the floor, he saw a six to eight foot puddle of water and had no difficulty seeing it. He admitted that adequate lighting illuminated the area and nothing obscured his vision. Polly's assistant store director, Joseph McCarty, who attended the scene of the accident after being requested to come to the front of the store, testified that he initially did not look at the area of the fall because he did not know why he had been summoned. He approached the cash register and saw plaintiff speaking with a cashier. He testified that when he learned of the incident he looked over at the location where plaintiff fell and saw water on the floor from four to five feet away without any difficulty. The record reflects that no evidence established that the water on the floor could not be seen upon casual inspection. On the contrary, the evidence submitted to the trial court unequivocally established that a person of ordinary intelligence, upon casual inspection, could see the water on the ground in the location where plaintiff fell.

Our Supreme Court has directed that trial courts must not focus "on the subjective degree of care used by the plaintiff." *Lugo*, 464 Mich at 523-524. Rather, the test requires application of an objective standard based on an average person of ordinary intelligence. *Hoffner*, 492 Mich at 461. In this case, the trial court applied the appropriate objective analysis and concluded correctly that the water hazard was open and obvious.

Further, plaintiff failed to establish that any special aspects existed that made the hazard unreasonably dangerous or effectively unavoidable. "The 'special aspects' exception to the open and obvious doctrine for hazards that are effectively unavoidable is a limited exception." *Id*. at 468 (emphasis added). For "effective unavoidability," a person, "for all practical purposes, must be required or compelled to confront a dangerous hazard." *Id*. at 468-469. The record in this case reflects that, from the time that HCI's personnel filled the freezer until plaintiff's fall approximately eight minutes elapsed and numerous people traversed the area without incident. The record does not establish that the hazard posed by the water constituted an unreasonably dangerous condition. The record also provides no indication that the condition was effectively unavoidable. The surveillance video footage presented to the trial court for its consideration indicated that over 30 people walked through the area by the freezer without incident before and after plaintiff fell. The record reflects that everyone but plaintiff successfully avoided the hazard. No evidence established that special aspects existed to remove this case from the application of the open and obvious doctrine. Therefore, the trial court did not err by applying the open and obvious doctrine in this premises liability case.

Plaintiff also argues that Polly's and HCI should have had actual and constructive notice of the existence of a puddle. We disagree.

To establish notice, "plaintiff had to demonstrate that defendant knew about the alleged water . . . or should have known of it because of its character or the duration of its presence." *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 11; 890 NW2d 344 (2016) (citing *Serinto v Borman Food Stores*, 380 Mich 637, 640-641; 158 NW2d 485 (1968)). In this case, the evidence established that neither Polly's employees nor HCI's personnel knew or had reason to know of the water on the floor at the location where plaintiff fell. Plaintiff presented no direct evidence that established when or how the water accumulated on the floor by the freezer. He speculated that the water resulted from melting ice after HCI's personnel restocked the freezer eight minutes before he fell. McCarty assumed that the water originated from melted ice, but he admitted that he did not know of its origin or even whether the liquid was water. No witness testified of seeing ice or of noticing ice melting in the location of plaintiff's fall. The surveillance video footage does not indicate spilled ice by HCI's personnel or any conduct by them that caused water to accumulate in the area. It showed that numerous customers traversed the area between the time that HCI's personnel restocked the freezer and plaintiff's fall. Some customers helped themselves to bags of ice. No one testified that any bag of ice broke or any ice or water lay in the area of the freezer immediately after HCI's personnel restocked it. Neither plaintiff nor McCarty testified to actually seeing any ice melting in the area. Plaintiff testified that he saw a six to eight foot puddle of water. McCarty testified that he saw some small puddles of water. Neither could testify as to the cause and origin of the water or the duration of its presence on the premises.

The surveillance video footage established that a mere eight minutes elapsed from their completion of the restocking to plaintiff's fall. The record reflects that no one alerted either Polly's employees or HCI's personnel of any ice or water in the vicinity of the freezer. The record reflects that the condition did not exist a sufficient length of time that Polly's was or should have been alerted to it. Only approximately eight minutes elapsed from the restocking of the freezer and plaintiff's fall, and during that time, over 30 people walked through the area where plaintiff fell. Not one stopped to alert a Polly's employee. The record indicates that plaintiff failed to establish the existence of a genuine issue of material fact respecting whether defendants knew or should have known that a hazardous condition existed on the premises.

Plaintiff contends that HCI's personnel had a duty to inspect and clean up the area. The record, however, reflects that HCI did not have a contractual obligation to Polly's to do so, nor did HCI have a policy that required its personnel to do so. HCI's personnel testified that they voluntarily cleaned up if they noticed any problem after restocking the freezer but no company policy required them to do so. They simply applied common sense and if they noticed water or ice they cleaned it up as a courtesy. McCarty testified that Polly's employees were tasked with taking steps to keep the premises clean if they noticed anything amiss. In this case, because of the short period from the restocking of the freezer to plaintiff's slip and fall, and because no one alerted Polly's employees of any ice or water, no one noticed the condition. Further, because of the heavy customer traffic through the area without incident, defendants had no reason to know that water lay on the floor.

Plaintiff also argues that HCI had possession and control of the premises or had joint control over the area around the freezer even though it did not own the premises. We disagree.

"Under the principles of premises liability, the right to recover for a condition or defect of land requires that the defendant have legal possession and control of the premises." *Morrow v Boldt*, 203 Mich App 324, 328; 512 NW2d 83 (1994), lv den 447 Mich 995 (1994). Possession and control are required because the one with possession and control is usually in the best position to prevent harm to others. *Kubczak v Chemical Bank & Trust Co*, 456 Mich 653, 662; 575 NW2d 745 (1998). Where a defendant does not have possession and control over the premises, it does not owe an invitee a duty. *Orel v Uni-Rak Sales Co, Inc*, 454 Mich 564, 565; 563 NW2d 241 (1997). "[T]he existence of a legal duty is a question of law for the court to decide." *Anderson v Wiegand*, 223 Mich App 549, 554; 567 NW2d 452 (1997) (citation omitted). If there is no duty, summary disposition is proper. *Beaudrie v Henderson*, 465 Mich 124, 130; 631 NW2d 308 (2001).

The record indicates that HCI did not have possession or control of the area or share joint control of it. Polly's management employees' uncontroverted testimonies established that Polly's owned the premises, owned the freezer, and maintained possession and control over the entire area. HCI merely supplied the ice and its personnel filled Polly's freezer when its supply needed restocking. HCI did not possess or control the premises, and therefore, did not owe plaintiff any duty. Further, if HCI possessed and controlled the premises as plaintiff contends, the operation of the open and obvious doctrine in this case would still apply. HCI would have had no duty to protect plaintiff from the open and obvious nature of the condition on the premises. Accordingly, the trial court did not err.

Lastly, plaintiff argues that HCI breached its duty of care and that it may be held liable for ordinary negligence. We disagree.

Claims premised on conditions of land and those sounding in ordinary negligence are distinct. *James v Alberts*, 464 Mich 12, 18-19; 626 NW2d 158 (2001). This Court determines whether a claim sounds in ordinary negligence or premises liability by examining "the complaint as a whole" and looking "beyond mere procedural labels to determine the exact nature of the claim." *Adams v Adams (On Reconsideration)*, 276 Mich App 704, 711; 742 NW2d 399 (2007). This Court explained in *Buhalis v Trinity Continuing Care Servs*, 296 Mich App 685, 692; 822 NW2d 254 (2012), that an action sounds exclusively in premises liability rather than ordinary negligence if a plaintiff's injuries arose from an allegedly dangerous condition of the land. "[T]his is true even when the plaintiff alleges that the premises possessor created the condition giving rise to the plaintiff's injury." *Id*. "In general, a premises possessor owes a duty to an invitee to exercise reasonable care to protect the invitee from an unreasonable risk of harm caused by a dangerous condition on the land." *Lugo v Ameritech Corp, Inc*, 464 Mich 512, 516; 629 NW2d 384 (2001). However, this duty does not extend to open and obvious dangers. *Joyce v Rubin*, 249 Mich App 231, 238; 642 NW2d 360 (2002). The open and obvious doctrine protects against liability regardless of the alleged theories of liability and despite creative pleading to avoid the application of the doctrine. *Millikin v Walton Manor Mobile Home Park, Inc*, 234 Mich App 490, 497; 595 NW2d 152 (1999).

In this case, plaintiff's complaint alleged that he suffered injury from a condition on the premises. Analysis of his complaint as a whole and looking beyond mere procedural labels in his pleading establish that his claims sounded in premises liability. Accordingly, his claim against HCI, despite being couched as an ordinary negligence theory of liability, sounded in premises liability subject to the application of the open and obvious doctrine. Because the open and obvious doctrine applies in this case, HCI did not owe plaintiff any duty. Further, because plaintiff's case sounds in premises liability, plaintiff could not proceed under an ordinary negligence theory of liability against HCI.

We conclude that the trial court correctly ruled that, after viewing the evidence in a light favoring plaintiff, no genuine issue of material fact existed regarding the open and obvious nature of the puddle of water on which plaintiff slipped, and therefore, defendants were entitled to summary disposition as a matter of law in this premises liability case.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Michael F. Gadola
/s/ James Robert Redford