JEROLD BORNSTEIN, AN INFANT, BY HIS GUARDIAN *AD LITEM*, SIDNEY BORNSTEIN, AND SIDNEY BORNSTEIN, INDIVIDUALLY, PLAINTIFFS-RESPONDENTS, v. METROPOLITAN BOTTLING COMPANY, INC., A BODY CORPORATE, DEFENDANT-APPELLANT.

Argued December 16, 1957—Decided March 3, 1958.

*Mr. James J. Langan* argued the cause for appellant (*Messrs. Emory, Langan, Lamb & Blake,* attorneys).

*Mr. William A. Davenport* argued the cause for respondents.

The opinion of the court was delivered by

HEHER, J. The Appellate Division of the Superior Court affirmed a judgment for plaintiffs entered on a jury verdict in the Law Division of the court in an action in tort against the defendant Metropolitan Bottling Company, Inc. for neg-

ligence in "bottling and dispensing" beverages, one "under the trade name of 'Pepsi-Cola,' " whereby "one of the bottles under the control of the defendant exploded" and destroyed the infant plaintiff's right eye. The case is here by our certification on defendant's motion.

Error is assigned on the holding of the Appellate Division, 45 *N. J. Super.* 365 (1957), that defendant, to use counsel's terms, "was in control of the bottle causing injury at the time of its occurrence" and the "doctrine of *res ipsa loquitur* is applicable."

*Dunn v. Hoffman Beverage Co.,* 126 *N. J. L.* 556 (*E. & A.* 1941), is invoked for the principle that the defendant "is not charged with the duty of showing affirmatively that something happened to the bottle after it left its control or management," but rather that "the plaintiff must show that there was due care during that period"; that "(i)t takes more than the mere happening of an accident to set the rule [of *res ipsa loquitur*] in operation"; "(t)he thing causing the accident must have been under the control of the defendant or his servant at the time of the accident"; and the argument is that although it is conceded that "there was more extensive handling of the bottle after it had left defendant's possession in the *Dunn* case than in [the instant case], nevertheless there clearly was sufficient handling of the bottle by plaintiff and his fellow employees [here] to belie any contention that defendant still had control of the bottle," and so the trial judge erred in drawing upon the maxim to deny defendant's several motions for a dismissal at the conclusion of plaintiffs' proof and at the close of the case.

The infant plaintiff, then 16 years of age, was employed as a counterman at a luncheonette in Newark known as "Cohen's Knishes," working Saturdays and Sundays only. On November 15, 1953, between 12:30 A. M. and 12:45 A. M., while engaged with a fellow employee, Jay Klugman, in transferring bottles of "Pepsi-Cola" from their case to the store cooler, one of six bottles momentarily on the cooler in the removal operation "exploded" and the splintered glass

struck plaintiff's right eye; there was "a pop, a noise"; "[t]here was a bottle broken on the floor in several pieces," "two big pieces split down the center," and there were "many little small splinters and pieces of glass around and the soda that was in the bottle was on the case and on the floor splattered all around, some on the wall also"; the "larger pieces [of glass] were on the floor and the smaller pieces were scattered all around."

Defendant had delivered the particular case of "Pepsi-Cola" and 11 other cases of this and like beverages to the luncheonette on the prior November 12, or the jury could have so found, although the same consideration would apply were the case one of three remaining from a delivery made by defendant on the prior November 4; these cases were stacked by defendant's own employees in a rear room used for the storage of such supplies, awaiting transfer to the cooler when needed. The store was closed on November 13. The plaintiff's part at the time was to carry the individual case to a waist-level stand at the cooler; he would then remove the bottles, one in each hand, "place them on the cooler and Jay would take them from the cooler and place them into the box"; from the "back room" to the cooler was "a very short distance"; there was "nothing in the way, no obstruction"; he "just walked from the back room to the cooler"; he had "brought one full case [of Pepsi-Cola] in and emptied it and brought the empty case back"; the "accident happened part way through the second case."

Counsel contends that plaintiffs' case "is entirely devoid of any proof of any negligent act on the part of defendant." But defendant was aware of the danger; and by way of defense it offered proof of the use of an inspection and testing system deemed adequate to fulfill the duty of reasonable care laid upon it by the law. It purchased but one type of bottle for "Pepsi-Cola," under "specifications" providing that the "bottle shall be a fifteen-ounce glass, white," of "twelve fluid ounces capacity," capable of withstanding "an internal pressure of 250 pounds"; it did not require a test by the manufacturer; "[e]very bottle is tested in [its own] plant."

But it was a spot check: "[o]n the receipt of new bottles which are brought in many gross lots at various times throughout the year certain bottles are taken from every shipment that we receive and we put them through a hydrostatic pressure test—not all, not every bottle, but we select a few from every shipment and submit them to a hydrostatic pressure test," to determine "to the best of our ability that these bottles have met our specifications as far as internal pressure is concerned"; the test "goes to the point of breaking of the bottle"; "[i]f a single bottle should break prior to the specification point additional bottles are taken and further tests are made to assure ourselves that the shipment meets our requirements"; the breaking point could be "as high as 400 pounds."

The bottling process itself includes inspection for "obvious defects" as the cases are set "on the belt conveyor" and "as they take them from the carrier, from the wood box, wooden case, and place them on the table"; "both new and used bottles, from the time of the receipt and storage * * *, are all handled in exactly the same manner"; in the "washing and sterilizing process," the "neck of each bottle is centered over a jet of water that is shot at high pressure into each bottle"; the "water pressure in that line is about 40 pounds"; the purpose is "to loosen any dirt or debris that may be in the bottle * * *." And there is visual inspection by means of a "milk glass light" later on; and as the bottle is "sealed against [the] rubber ring there is a sudden shot of forty pounds of air pressure thrown into [the] bottle, an instantaneous shot."

The "pressure inside of a sealed filled bottle of Pepsi-Cola at room temperature would be forty-six pounds"; at a temperature of 90°, the inside pressure would be 66 pounds; defendant's standard "required [bottle] resistance to pressure" of 250 pounds.

All this testimony was adduced from defendant's "supervisor of production," Rothwell, whose conclusions were based on "long experience in the bottling business and recollection of the reports of glass experts that [counsel] refer to, of

which [he] was not one." He said that where "we have been able to recover a bottle after a bottle breaking and submit it to a bottle expert for examination," the "opinion as to cause of breaking in 100 out of 100 cases" was "that the bottle received an external blow"; "a bottle breaks; it never explodes; the instantaneous release of the carbonation that is in [the] drink * * * due to breakage of the bottle then throws those particles of glass about." He accounted for "the glass strewn about and the soda splashed against the counter, case and the wall" as "due to the fact that the bottle had received a blow which put a fracture in [the] glass"; the "blow may have occurred hours before the actual breakage that you observed."

Counsel observes that plaintiff did not offer expert opinion evidence and defendant's "expert was not contradicted in any way"; and that "no testimony" was introduced by plaintiff "of any negligent act on the part of defendant."

The maxim *res ipsa loquitur* symbolizes a permissible presumption of negligence from the plaintiff's proof, that is to say, an allowable inference of the defendant's want of due care where (a) the occurrence itself ordinarily bespeaks negligence; (b) the instrumentality was within the defendant's exclusive control; and (c) there is no indication in the circumstances that the injury was the result of the plaintiff's own voluntary act or neglect. The rule is grounded in probability and the sound procedural policy of placing the duty of producing evidence upon the party who has superior knowledge or opportunity for explanation of the causative circumstances. This is an essentially permissive presumption that these circumstances furnish reasonable grounds for the inference that if due care had been exercised by the person having control of the instrumentality causing the injury, the mishap would not have occurred. If such an inference of fact is sustainable as reasonably probable, a *prima facie* case is established, and the issue is taken to the jury. The operation of this rule of evidence does not shift the burden of persuasion. *Whalen v. Consolidated Traction Co.*, 61 *N. J. L.* 606

(*E. & A.* 1898); *Hughes v. Atlantic City and Shore R. Co.,* 85 *N. J. L.* 212 (*E. & A.* 1914); *Garland v. Furst Store,* 93 *N. J. L.* 127 (*E. & A.* 1919); *Cicero v. Nelson Transportation Co., Inc.,* 129 *N. J. L.* 493 (*Sup. Ct.* 1943); *McCormick on Evidence,* § 309; *Wigmore on Evidence* (*3d ed.*), §§ 24, 2509. See also *MacPherson v. Canada Dry Ginger Ale, Inc.,* 129 *N. J. L.* 365 (*Sup. Ct.* 1943).

The court is called on in the first instance, said Mr. Justice Swayze,

"* * * to say whether there is any evidence of negligence to go to the jury; in the absence of direct evidence, he may, in cases where the maxim applies, hold that the circumstances are such as will, unexplained, permit the jury to draw the inference of negligence; but that inference is still one for the jury and not for the court. They may not believe the witnesses; the circumstances may be such that the jury will attribute the injury to some cause with which the defendant has nothing to do; they may find the inference of negligence too weak to persuade their minds; they may think a reasonably prudent man would have been unable to take precautions to avoid the injury; and in any event they may render a verdict for the defendant. This is within their province even when there is no explanation by the defendant. When there is such explanation, it is for the jury to decide just as in the ordinary case of whatever kind, what the actual facts are and what inference should be drawn therefrom. The most that is required of the defendant is explanation, not exculpation; and this explanation may leave the mind in equipoise in which case the defendant would be entitled to a verdict because the plaintiff has failed to prove his case by the weight of the evidence. The question discussed in the cases that involve the application of the maxim *res ipsa loquitur* has always been whether mere proof of the injury justified a jury in drawing an inference of negligence so that a nonsuit would be improper, * * *. Negligence in such a case may be a permissible inference, but it is not a necessary one * * *." *Hughes v. Atlantic City and Shore R. R. Co., supra.*

Compare *Meltzer v. Division of Tax Appeals,* 134 *N. J. L.* 510 (*Sup. Ct.* 1946).

Dean Wigmore, *Ibid.,* § 2509, states this to be one of the considerations limiting the use of the maxim: "The apparatus must be such that in the ordinary instance no injurious operation is to be expected unless from a careless construction, inspection, or user."

Most presumptions, affirms Professor McCormick, *Ibid.*, §§ 309, 311, "have a strong footing in probability"; by this is meant that "the basic facts of the presumption not merely give the proponent the benefit of a rule of law permitting or requiring the assumption of certain inferred facts, but they also constitute circumstantial evidence raising a logical probative inference that such facts exist"; and where the party resting on the presumption is unable to produce any witnesses who will directly contradict the adversary's rebutting evidence denying the presumed facts, the conflict between the "circumstantial inferences—for the inference remains though the 'presumption' has 'disappeared' —and the direct testimony" is ordinarily an issue for the jury. See *Ibid.*, § 317; also *Wigmore*, § 2489; 20 *Am. Jur., Evidence,* § 133; 31 *C. J. S. Evidence* § 111.

But here the insistence is that there is no evidence of control of the bottle as a basic fact of the presumption permissible under the doctrine of *res ipsa loquitur,* and defendant is not under a duty to show affirmatively that "something happened to the bottle" after "it left its control or management."

█ Exclusive control of the instrumentality by the defendant is of the essence of this rule of evidence. Causation is deducible on the ground of probability where the mishap was such in nature and circumstance that it would not have occurred in the ordinary course had those in control practiced due care; and, by the same standard of probability, the negligence is by fair inference attributable to the defendant supplier of bottled beverages where, as here, possession and control of the commodity had been lost by delivery to a dealer or retailer, and there is no rational ground for imputing the presumed negligence to such successor in control, shown by a preponderance of evidence excluding intervening causation, a burden cast upon the plaintiff. *Payne v. Rome Coca-Cola Bottling Co.,* 10 *Ga. App.* 762, 73 *S. E.* 1087 (*App. Div.* 1912) ; *Zentz v. Coca-Cola Bottling Co. of Fresno,* 39 *Cal. 2d* 436, 247 *P. 2d* 344 (*Sup. Ct.* 1952) ; *Coca-Cola Bottling Co. of Fort Smith, Ark. v.*

*Hicks,* 215 *Ark.* 803, 223 *S. W. 2d* 762 (*Sup. Ct.* 1949); *Auzenne v. Gulf Public Service Co.,* 181 *So.* 54 (*La. App.* 1938); *Bradley v. Conway Springs Bottling Co.,* 154 *Kan.* 282, 118 *P. 2d* 601 (*Sup. Ct.* 1941); *Boykin v. Chase Bottling Works,* 32 *Tenn. App.* 508, 518, 222 *S. W. 2d* 889 (*App. Ct.* 1949). And see 2 *Villanova Law Rev.,* 1956–57, for an excellent review of the cases and the essential principles.

In *Payne v. Rome Coca-Cola Bottling Co., supra,* where the plaintiff also suffered the loss of an eye from fragments of an exploded bottle, the bottled beverage was bought by the plaintiff's brother from Cook, a retail vender, who bought it from Barnett, to whom it was sold by the defendant. The holding was that "[s]ince for every effect there is a cause, where negligence exists, some one must have been the responsible author"; "[i]t was not Cook, the last vender of the bottle, nor the plaintiff's brother, nor the plaintiff, nor yet Barnett, because they all stand exonerated by direct or circumstantial evidence of their freedom from fault"; but "the inference of negligence remains, and some one is *prima facie* to blame," and "[u]nder the proven facts, the occurrence speaks of the defendant's negligence, and it alone," in that the defendant had charged the bottle with carbonic acid gas, had "put together the constituent elements of the beverage," had "manufactured or procured the bottle to hold these elements," and had "put the bottle in circulation with an invitation to the public to use the contents as a harmless and refreshing beverage."

*Res ipsa loquitur* "means simply 'the thing, or affair, speaks for itself,' and, so speaking, authorizes the inference of negligence in the absence of a showing to the contrary"; where "the thing is shown to be under the management of the defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant that the accident arose from want of proper care"; the defendant is not liable "unless it appears from

all the facts and circumstances that there is a sufficient causal connection between his conduct and the plaintiff's injury"; the maxim is not ordinarily applicable "if it is equally probable that the negligence was that of someone other than the defendant," but the plaintiff "need not exclude all other persons who might possibly have been responsible where the defendant's negligence appears to be the more probable explanation of the accident"; and "the fact that the accident occurs sometime after the defendant relinquishes control of the instrumentality which causes the accident does not preclude application of the doctrine provided there is evidence that the instrumentality had not been improperly handled by the plaintiff or some third person, or its condition otherwise changed, after control was relinquished by the defendant." *Zentz v. Coca-Cola Bottling Co. of Fresno, supra.*

The evidence here absolves the retailer and his servants and third persons of all fault and responsibility for the occurrence; certainly, the jury could have so found. The cases of Pepsi-Cola were delivered on Thursday and stacked in the retailer's storeroom by defendant's own employees; the store was closed on Friday, and the stored cases remained as they were until late Saturday, at midnight, when the transfer of the bottles to the cooler was undertaken. And the same finding would have been permissible as to the three remaining cases delivered November 4.

The jury could well conclude that there was fault imputable to the defendant bottler, either in the inspection or the filling process, as the more probable hypothesis with reference to the possibility of other hypotheses, a just and reasonable inference from all the circumstances. *Jackson v. Delaware, L. & W. R. Co.*, 111 *N. J. L.* 487 (*E. & A.* 1933). The force of the explosion suggests defective glass construction or excessive carbonation. The bottles were not tested by the manufacturer; defendant's hydrostatic pressure test was given at random; and it was well within the province of the jury to find that the pressure-testing did

not comport with the requirements of due care in the re-filling of used bottles. And a finding of deficient visual inspection would not in the circumstances transcend the bounds of reasonable inference. There is no suggestion of careless handling of the bottle by the retailer or a third person, or its subjection to sharp temperature changes or an intervening extraneous force while in the retailer's possession. In fine, it is a reasonable presumption that the explosion came from internal pressure, a condition more probably related to the inspection, filling, and handling procedure within defendant's exclusive control and a want of due care in the process.

The bottling of liquids under pressure has its hazards that impose the correlative duty of care commensurate with the risk of harm.

As Mr. Justice Holmes said in *Graham v. Badger,* 164 *Mass.* 42, 41 *N. E.* 61 (*Sup. Jud. Ct.* 1895), cited with approval by the Arkansas Supreme Court in the case cited *supra, res ipsa loquitur* is "merely a short way of saying that, so far as the court can see, the jury, from their experience as men of the world, may be warranted in thinking that an accident of this particular kind commonly does not happen except in consequence of negligence, and that therefore there is a presumption of fact, in the absence of explanation or other evidence which the jury believe, that it happened in consequence of negligence in this case."

It was the province of the jury to determine whether the evidence sustained the circumstantial inference embodied in the presumption.

Circumstantial or presumptive evidence, as a basis for deductive reasoning in the determination of civil issues, is defined as "a mere preponderance of probabilities, and, therefore, a sufficient basis for decision." *Jackson v. Delaware, L. & W. R. Co., supra.* It need not have the quality of certainty. The burden of persuasion is sustained if the evidence demonstrates the tendered hypothesis as a rational inference, that is to say, a presumption grounded in a preponderance of the probabilities according to the com-

mon experience of mankind. It is not easy to lay down with precision the line of demarcation between a just and reasonable inference and mere conjecture or surmise. The accepted standard of persuasion is that the determination be probably .founded in truth. A bare quantitative preponderance is not enough. It is requisite that the evidence be such as to lead a reasonably cautious mind to the given conclusion. *Austin v. Pennsylvania R. Co.*, 82 *N. J. L.* 416 (*E. & A.* 1911); *Riker v. John Hancock Mutual Life Ins. Co.*, 129 *N. J. L.* 508 (*Sup. Ct.* 1943). Dean Wigmore, *Ibid.*, § 2498, quotes from a treatise by Professor Trickett on the doctrine of preponderance of evidence: "There is no measure of the weight of evidence (unless the witnesses on the evidential facts are counted) other than the *feeling of probability* which it engenders." And see *Cicero v. Nelson Transportation Co., Inc., supra; Zentz v. Coca-Cola Bottling Co. of Fresno, supra.*

Affirmed.

FRANCIS, J. (concurring). I concur in the conclusion that the circumstances disclosed by the proof justify an inference that the explosion of the bottle resulted proximately from the negligence of the defendant.

However, the court's opinion is based upon an application of the doctrine of *res ipsa loquitur* which, it is said, "symbolizes a permissible presumption of negligence from the plaintiff's proof, that is to say, an allowable inference of the defendant's want of due care where (a) the occurrence itself ordinarily bespeaks negligence; (b) the instrumentality was within the defendant's exclusive control; * * *." In this context, I take the reference to exclusive control to relate to the time of the indicated negligence and not to the time of the plaintiff's injury, because obviously when the explosion occurred the bottle had long since passed out of the defendant's control. Our cases applying the principle of *res ipsa loquitur* generally speak in terms of control at the moment of accident. *Mumma v. Easton and Amboy Railroad*

*Co.*, 73 *N. J. L.* 653, 658 (*E. & A.* 1906). I agree with Dean Prosser that:

"It would be far better, and much confusion would be avoided, if the idea of 'control' [as an essential element] were discarded altogether, and we were to say merely that the apparent cause of the accident must be such that the defendant would be responsible for any negligence connected with it." *Prosser, Law of Torts* (2d ed. 1955), 205, 206. (Insertion mine)

Such is the basic thesis of the Appellate Division opinion in this case. 45 *N. J. Super.* 365 (*App. Div.* 1957). And see, *Francois v. American Stores Co.*, 46 *N. J. Super.* 394, 397–398 (*App. Div.* 1957).

FRANCIS, J., concurring in result.

*For affirmance*—Chief Justice WEINTRAUB, and Justices HEHER, WACHENFELD, BURLING, JACOBS and FRANCIS—6.

*For reversal*—None.