**Frani FEIT, Individually and assignee of Irwin J. Feit**

**Frani Feit, Appellant**

v.

**GREAT WEST LIFE AND ANNUITY INSURANCE COMPANY, a Colorado Corporation.**

**No. 07–1481.**

United States Court of Appeals, Third Circuit.

Argued on March 13, 2008.

Filed March 31, 2008.

Barry D. Epstein, Esq. (Argued), Michael J. Epstein, Esq., The Epstein Law Firm, P.A., Rochelle Park, New Jersey, Counsel for Appellant.

Michael J. Zaretsky, Esq. (Argued), Chorpenning, Good, Carlet, & Garrison, Esqs., Clifton, New Jersey, Counsel for Appellee.

Before: FUENTES, CHAGARES, and VAN ANTWERPEN, Circuit Judges.

## OPINION OF THE COURT

VAN ANTWERPEN, Circuit Judge.

Plaintiff–Appellant Frani Feit appeals from the District Court's decision granting Defendant–Appellee Great–West Life and Annuity Insurance Company's renewed motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b), which resulted in the entry of judgment in favor of the defendant. For the following reasons, this Court will affirm.

### I.

Because we write solely for the parties, we will only address those facts necessary to our opinion.

This case concerns a $1,000,000 accidental death benefit clause contained in a life insurance policy issued by Defendant Great–West Life and Annuity Insurance Company ("Great–West"). The deceased, Dr. David Feit, was a practicing dentist and a member of the American Dental Association ("ADA"), which maintained the life insurance benefits at issue. Plaintiff Frani Feit is the surviving spouse of Dr. Feit and is one of two designated beneficiaries of the life insurance policy. Mrs. Feit is proceeding in this action individually and as the assignee of the rights of Irwin Feit, Dr. Feit's father, the other designated beneficiary.

Dr. Feit died on July 22, 2002, in Rockland County, New York. The cause of Dr. Feit's death was the central dispute at trial. At the time of his death, Dr. Feit was a 44–year–old non-smoker with no history of significant cardiac disease or illness. Dr. Feit had elevated cholesterol, but was taking medicine to address this problem at the time of his death. Prior to his death, Dr. Feit walked five miles four-

to-five times per week, and regularly played basketball on Sundays.

Dr. Feit had a $1,000,000 group term life insurance policy at the time of his death and had an additional $1,000,000 accidental death benefit. The accidental death benefit clause reads:

If a Member sustains bodily injury which:

(1) is caused solely by accidental means; and

(2) is sustained while he is insured under the Group Policy; and

(3) results in his death;

then the Company will pay an additional amount of insurance.

Payment [of additional amount of insurance] will be made only if death:

(a) occurs within 90 days after the accident;

(b) is a direct result of the accident; and

(c) is unrelated to any other cause.

*App.* at 242.

During the morning of July 22, 2002, Dr. Feit's car drove off the southbound lane of a Rockland County highway, crashing through the guardrail and damaging ten feet of the rail. The vehicle proceeded 670 feet down a grassy slope, struck a chain-link fence, and stopped after "burrowing into a loose mound of dirt." *App.* at 265. During this crash, the car damaged a sign and part of the chain-link fence, and parts of the vehicle were scattered throughout the car's path. Police found Dr. Feit dead, in the front seat area of the car, clutching his chest and biting his shirt. Dr. Feit was not wearing his seatbelt at the time the police arrived, and the airbags were not deployed. Joseph Segelbacher, the in-

vestigator for the County of Rockland's Medical Examiner's Office, reported that it appeared as though Dr. Feit "bounced around" inside the car. *Id.* at 266. The car was declared "totaled" in the crash by the insurance company.

After learning of the crash, Mrs. Feit and Dr. Feit's dental assistant, Joan Van Peenen, went to the Medical Examiner's office and identified the body. While at the Medical Examiner's office, Mrs. Feit gave statements to Segelbacher, and the contents of these statements were contested. Mrs. Feit claims that she told Segelbacher only that Dr. Feit experienced back pain in the past. However, Segelbacher reported that Mrs. Feit told him that Dr. Feit complained of chest and back pain about one week prior to the crash. Mrs. Van Peenen corroborated Mrs. Feit's version of the conversation.

Dr. Feit's body was examined at the scene of the crash by several people. Trooper Darryl Polite testified that he did not notice any cuts, lacerations, abrasions, or bruises on Dr. Feit's body. Segelbacher made visual observations of Dr. Feit's body both at the scene and at his office, and did not note any trauma to the body. In addition, Segelbacher inspected the car's interior for possible evidence of impact with the body but found no evidence of impact.

Dr. Marcello Zappi performed an autopsy and prepared an autopsy report. *App.* at 256–61. The autopsy lists as the cause of death: "Myocardial infarction, old due to atherosclerotic obstruction of coronary arteries."[1] *Id.* at 259. The report also notes atherosclerotic obstruction in the right and left coronary arteries which reaches a maximum of 50% blockage.[2] *Id.*

1. At trial, Dr. Zappi admitted that if Segelbacher had provided incorrect or incomplete information about chest pains allegedly experienced by Dr. Feit prior to the crash, it

would affect his opinion about the cause of death.

2. However, the microscopic portion of the autopsy report lists "[c]oronary atherosclero-

at 257. The autopsy states there are "no discernible bony fractures nor signs of trauma," and Zappi made no findings of any injuries, fractures, abrasions, lacerations, or anything else "unusual that would raise suspicion of any type of trauma." *Id.* at 256–59. In addition, Dr. Zappi put Dr. Feit's joints and extremities through movements, and this examination caused him to rule out trauma to the vertebral column, including the base of the skull and the extremities. After an internal examination of Dr. Feit's body, Dr. Zappi concluded that there was no trauma or injury to Dr. Feit.[3]

Frani Feit's initial claim for the additional $1,000,000 in accidental death benefits was denied by Great–West on August 15, 2002, because the death certificate listed "natural cause" as the cause of death. Frani Feit responded to this denial by seeking reconsideration, and provided Great–West with the autopsy report, the accident report, an EKG report from Dr. Feit's cardiologist, and evidence that the car was totaled. Great–West provided this information to a consulting physician, who reaffirmed the autopsy findings. After considering this new evidence, Great–West again rejected Frani Feit's accidental death benefit claim. *App.* at 250–51.

Frani Feit commenced this lawsuit on May 15, 2003, in the Superior Court of New Jersey, Passaic County. Great–West removed this case to the United States District Court for the District of New Jersey based on diversity jurisdiction. During discovery, Frani Feit named two experts, Dr. Arthur Fisch (Cardiologist) and Dr. Duc Duong (Pathologist). Great–West

deposed these experts. *See App.* at 79–153.

At trial, Dr. Fisch and Dr. Duong both testified that the autopsy's stated cause of death, a myocardial infarction, did not actually cause Dr. Feit's death.[4] Both doctors gave several reasons for this conclusion, and did so after examining the autopsy report, the police accident report, the death certificate, and Dr. Feit's medical records. First, they noted a lack of findings of clots or thrombus, which would generally be present in the case of an acute myocardial infarction. Next, they noted that 50% blockage generally does not result in a heart attack. Then, the experts stated that the small scar in the left ventricle noted in the autopsy report reflects an old, small injury, unrelated to Dr. Feit's death. Finally, the experts noted that the normal EKG four months before the crash demonstrated that Dr. Feit did not suffer from heart disease.

Both experts also testified that the autopsy was incomplete and deficient due to the insufficient internal examination of the head and neck. Dr. Duong was even prepared to testify, as his expert report stated, that "I can state with a reasonable degree of medical certainty [that] Dr. Feit died of head and neck injuries during the car accident." *App.* at 157. Great–West filed a motion *in limine* to exclude the testimony of the experts, and this motion was granted by the District Court only with respect to Dr. Duong's conclusion that head and neck injuries caused Dr. Feit's death.

---

sis, moderate to severe," *App.* at 260, which Dr. Zappi testified means 70–75% blockage.

**3.** Dr. Zappi did not complete an internal examination of the head and neck, and conceded that if he had done such an examination, he would have been able to give a more accurate and complete cause of death.

**4.** Moreover, Dr. Fisch's expert report concludes that neither "an acute cardiac event such as a myocardial infarction [nor] a chronic cardiac condition contributed to [Dr. Feit's] death." *App.* at 155.

In granting the motion *in limine*, the District Court first noted that a hearing was unnecessary because there was already a substantial evidentiary record consisting of the expert report, deposition, and letter brief filed by Frani Feit in opposition to the motion. *App.* at 11. In examining the reliability of Dr. Duong's head and neck injury conclusion, the District Court stated:

> Thus, Dr. Duong's opinion on cause of death can be summarized as proceeding from a rejection of myocardial infarction as the cause of death, acknowledgment that a fatal car accident may, in the absence of external injuries, suggest head and neck injury as a possible cause of death, recognition that the autopsy did not include an examination of Dr. Feit's head or an internal examination of the neck or spine, and a conclusion that head and neck injury is in fact the actual cause of death.

*Id.* at 14. Therefore, the District Court granted the motion in limine with respect to Dr. Duong's conclusion that a head and neck injury was the cause of death, stating that "Dr. Duong's opinion that Dr. Feit died of a head or neck injury is pure speculation, devoid of any discernible evidence or scientific method." *Id.* at 17.

Frani Feit filed a motion to reconsider, and attached a Certification from Dr. Duong. *App.* at 160–63. This Certification explained Dr. Duong's "differential diagnosis" methodology, and sought to clari-

fy how he arrived at his conclusion as to the cause of death. *Id.* The District Court denied this motion, and in doing so reviewed the "differential diagnosis" case law and "found Dr. Duong's opinion wanting and inadmissible." *Id.* at 168. Specifically, the District Court pointed out that Dr. Duong failed to offer a reasonable explanation for eliminating a new fatal arrhythmia as an alternative theory of causation, despite acknowledging an arrhythmia as a possibility at his deposition. *Id.* at 169–70. In addition, the District Court generally regarded Dr. Duong's opinion as "subjective beliefs or unsupported speculation," due to the insufficient facts regarding the possibility of a head or neck injury. *Id.* at 170.

At trial, after Frani Feit rested, Great–West moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure ("FRCP") 50(a) and renewed their previous summary judgment motion.[5] The District Court reserved decision on these motions, and Great–West proceeded to present its case. At the close of its evidence, Great–West renewed its motion for judgment as a matter of law, and the District Court once again reserved its decision.

On October 20, 2006, after two days of deliberations, the jury returned a unanimous verdict in favor of Frani Feit.[6] On November 14, 2006, the District Court stated that it "carefully considered" Great–

---

5. Great–West's prior summary judgment motion was denied with respect to the issues litigated at trial.

6. The jury answered "Yes" to Question 1: "Did the decedent, David J. Feit sustain injuries caused by a July 22, 2002 motor vehicle accident?" *App.* at 173.

   The jury answered "No" to Question 2: "Were the injuries sustained by David Feit in the July 22, 2002 motor vehicle accident, standing alone, the direct, efficient and predominant cause of his death?" *Id.*

The jury answered "Yes" to Question 3: "Did the accident of July 22, 2002 set in motion a chain of events that activated or excited a preexisting medical condition suffered by David Feit, which before the accident was passive or dormant and not alone sufficient to cause death, but which was activated by the accident such that the condition, in conjunction with injuries sustained in the accident, contributed to David Feit's death?" *Id.* at 174.

West's motion for judgment as a matter of law and denied it. *Id.* at 213. The District Court thereafter entered judgment for Frani Feit.

On January 26, 2007, the District Court granted Great–West's renewed motion for judgment as a matter of law pursuant to FRCP 50(b), and conditionally granted GreatWest's motion for a new trial.[7] *App.* at 21–50. In granting Great–West's motion for judgment as a matter of law, the District Court found that Frani Feit failed to present sufficient evidence that Dr. Feit suffered *any* "bodily injury," a prerequisite for a jury to find in Frani Feit's favor. *Id.* at 38. As a result of granting Great–West's motion for judgment as a matter of law, the District Court entered judgment in favor of Great–West. *Id.* at 50. Frani Feit filed a timely Notice of Appeal.

## II.

The District Court had subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because Frani Feit (Appellant/Plaintiff) is a resident of New Jersey, Great–West (Respondent/Defendant) is a Colorado corporation, and the amount in controversy exceeds $75,000. This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291.

## III.

### A. *Granting of Rule 50(b) Motion*

This Court exercises plenary review over the District Court's decision to grant a motion for judgment as a matter of law under Rule 50(b). *Delli Santi v. CNA Ins. Cos.,* 88 F.3d 192, 200 (3d Cir.1996). In determining whether this motion for judgment as a matter of law was properly granted, we must "inquire whether there is any legally sufficient evidentiary basis for a reasonable jury to find for [Frani Feit]." *Weisgram v. Marley Co.,* 528 U.S.

440, 453–54, 120 S.Ct. 1011, 145 L.Ed.2d 958 (2000) (internal quotations omitted). In making this determination, we "must draw all reasonable inferences in favor of [Frani Feit], and [we] may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). However, "[t]he question is not whether there is literally no evidence supporting the party against whom the [Rule 50(b) ] motion is directed but whether there is evidence upon which the jury could properly find a verdict for that party." *Lightning Lube, Inc. v. Witco Corp.,* 4 F.3d 1153, 1166 (3d Cir.1993) (citing *Patzig v. O'Neil,* 577 F.2d 841, 846 (3d Cir.1978)).

In this case, the jury found that Frani Feit proved the following two elements for recovery under an accidental death benefit clause: (1) Dr. Feit suffered some type of bodily injury and (2) said bodily injury activated or excited a preexisting medical condition which was passive or dormant prior to the crash, and which in conjunction with the bodily injury caused Dr. Feit's death. *App.* at 173–74. Therefore, this Court must examine whether there was sufficient evidence presented at trial for a reasonable jury to make these two findings.

Frani Feit offered no direct evidence of any bodily injury suffered by Dr. Feit as a result of his car crash. However, Frani Feit argues that she presented sufficient circumstantial evidence to allow a jury to infer that Dr. Feit suffered *some* bodily injury during the crash. Effectively, her theory is as follows: it is well within the jury's province to infer that bodily injury resulted from a car crash where an unrestrained driver's car left the road in a

---

7. FRCP 50(c)(1) instructs district courts to rule on motions for new trial to account for the possibility that the granting of a renewed motion for judgment as a matter of law could be vacated or reversed on appeal.

violent fashion and came to rest 670 feet from the road after colliding with an embankment. *Appellant's Br.* at 32. We agree with Frani Feit that the District Court erred in determining that she failed to provide sufficient evidence of a bodily injury suffered by Dr. Feit, as the circumstantial evidence about the nature of the car crash provided a legally sufficient basis for the jury to find that Dr. Feit suffered at least some bodily injury, even if only minor.

■ However, this Court will still affirm the District Court's decision to grant judgment as a matter of law because we are compelled to conclude that Frani Feit presented virtually no evidence to permit a jury to find that Dr. Feit had an underlying heart condition or that some unspecified bodily injury triggered or activated an underlying heart condition, which in conjunction with the injury caused Dr. Feit's death.[8] In fact, Feit argued just the opposite in her opening appellate brief, claiming that Dr. Feit "had no cardiac disease or illness." *Appellant's Br.* at 2.

Generally, expert testimony is needed to prove causation of a medical condition. *See J.W. v. L.R.*, 325 N.J.Super. 543, 740 A.2d 146, 149 (1999) (citing *Allendorf v. Kaiserman Enters.*, 266 N.J.Super. 662, 630 A.2d 402 (1993)); *see also Bushman v. Halm*, 798 F.2d 651, 659 (3d Cir.1986). Here, Frani Feit's experts testified that a heart condition was *not* the cause of Dr. Feit's death, and thus their testimony does not support the jury's finding that an underlying condition was triggered by the crash. Dr. Zappi was the only expert who addressed this "triggering" issue at trial, and he simply conceded upon cross examination that given Dr. Feit's old heart attack and the nature of the crash, it was "possible" but not likely that Dr. Feit's preexisting condition could have been triggered. Circumstantial evidence is defined as "a preponderance of probabilities according to the common experience of mankind." *Fedorczyk v. Caribbean Cruise Lines, Ltd.*, 82 F.3d 69, 74 (3d Cir.1996) (citing *Bornstein v. Metropolitan Bottling Co.*, 26 N.J. 263, 139 A.2d 404, 411 (1958)). However, "the possibility of the existence of an event does not tend to prove its probability." *Fedorczyk*, 82 F.3d at 75. Because Dr. Zappi only testified in terms of possibilities, there was insufficient medical testimony to support a jury finding on causation.

Even if we were to conclude that an expert did not need to testify about causation in order for Frani Feit to prevail, the evidence in support of the "triggering" theory of causation is insufficient to permit the jury to infer causation. Frani Feit offered no evidence of a triggering of an underlying heart condition. Frani Feit argues that it "is a matter of common knowledge that a stressful event like a violent car accident can cause bodily injury that triggers a cardiac event." *Reply Br.* at 9. This argument is far too speculative, as it speaks again only of possibilities rather than probabilities.[9] As a whole, the evidence offered by Frani Feit does not provide a legally sufficient evidentiary basis for a jury to find in her favor on the issue of causation. Therefore, this Court will affirm the District Court's decision granting Great–West's motion for judgment as a matter of law.

---

8. In addition, Feit failed to provide sufficient evidence that any injury suffered by Dr. Feit in the accident was "standing alone, the direct, efficient and predominant" cause of death. *App.* at 173. Therefore, the jury correctly answered "No" to Question 2 on the Verdict Form. *Id.*

9. Moreover, it is highly doubtful this really is a "matter of common knowledge."

## B. Conditional Granting of New Trial Motion

Because this Court will affirm the District Court's granting of Great–West's Rule 50(b) motion, it is unnecessary to determine whether the new trial motion was properly granted.

## C. Exclusion of Expert Testimony

This Court reviews the decision to exclude expert opinions for abuse of discretion. *General Elec. Co. v. Joiner,* 522 U.S. 136, 143, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997). In addition, we review the District Court's decision of whether a hearing was required before ruling on the admissibility of an expert's opinion for abuse of discretion. *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 152, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999) ("The trial court must have the same kind of latitude in deciding *how* to test an expert's reliability, and to decide whether or when special briefing or other proceedings are needed to investigate reliability, as it enjoys when it decides *whether or not* that expert's relevant testimony is reliable.") (emphasis in original).

■ We first must address whether the District Court abused its discretion in determining that no hearing was required before ruling on the reliability of Dr. Duong's conclusion that a head and neck injury caused Dr. Feit's death. Although it is true that this Court has "long stressed the importance of *in limine* hearings under Rule 104(a) in making the reliability determination required under Rule 702 and *Daubert,*" it is within the discretion of the District Court to determine whether a hearing is necessary. *Padillas v. Stork–Gamco, Inc.,* 186 F.3d 412, 417–18 (3d Cir.1999). In *Padillas,* this Court determined that the District Court abused its discretion in failing to hold a hearing where the evidentiary record before the District Court was insufficient to allow the District Court to determine what methodology was used by the expert in arriving at his conclusions. *Id.* at 418.

In this case, the District Court decided that it did not need to conduct a hearing on the reliability of Dr. Duong's proposed testimony because there was an adequate factual record. *App.* at 11. The District Court noted that "[t]he parties have briefed the issues of admissibility of expert testimony in both the summary judgment context and in the instant *in limine* motion." *Id.* In addition to these briefs, the District Court also had the deposition testimony of Dr. Duong, which the District Court noted "reveal[s] that Plaintiff's expert[ ] ha[d] ample opportunity to respond to Defendant's challenges to [his] conclusions, analyses and methodologies, and to explain [his] methods and opinions." [10] *Id.* It should also be noted that in Frani Feit's Letter Brief in Opposition to Defendant's Motion *in Limine,* Frani Feit's attorney specifically stated that "during the course of their deposition testimony, [the experts] have further stated the bases of their opinions." *Id.* at 276.

Therefore, when the District Court granted Great–West's motion *in limine* and excluded certain portions of Dr. Duong's testimony, the District Court had a sufficient factual record before it to ascertain Dr. Duong's methodology.[11] *See*

---

**10.** Although Frani Feit argues that "a fair reading of the discovery deposition indicates that Dr. Duong attempted to explain his differential diagnosis, but that defense counsel interrupted him or asked him limiting questions," she cites no examples of such conduct. *Appellant's Br.* at 48. We therefore will not address this claim.

**11.** Although the District Court did not directly reference the term "differential diagnosis" in its opinion granting Great–West's motion *in limine,* the District Court nonetheless understood the basic methodology Dr. Duong utilized. *See App.* at 14 (summarizing the process at which Dr. Duong arrived at his conclusion). Later, when the District Court denied Frani Feit's motion to reconsider, the

254

*Oddi v. Ford Motor Co.*, 234 F.3d 136, 154 (3d Cir.2000) (concluding that the District Court did not abuse its discretion in not holding a hearing where the District Court had before it the depositions and affidavits of the plaintiff's experts); *see also Kumho,* 526 U.S. at 142, 152, 119 S.Ct. 1167 (approving of District Court's denial of hearing where the District Court determined that the two depositions before it were sufficient to allow an inquiry under *Daubert* ). Because the factual record was sufficient to allow the District Court to make a proper reliability determination under *Daubert,* we conclude that the District Court did not abuse its discretion in deciding the motion *in limine* without a hearing.

■ The District Court also did not abuse its discretion in excluding Dr. Duong's opinion that a head and neck injury caused Dr. Feit's death. Frani Feit argues that the District Court should not have excluded Dr. Duong's opinion on the cause of death because Dr. Duong's opinion was based upon a properly conducted differential diagnosis. However, although this Court generally recognizes differential diagnosis as a reliable methodology, *Heller v. Shaw Indus., Inc.,* 167 F.3d 146, 156 (3d Cir.1999), the differential diagnosis must be properly performed in order to be reliable. *See In re Paoli R.R. Yard PCB Litig.,* 35 F.3d 717, 758–59 (3d Cir.1994).

To properly perform a differential diagnosis, an expert must perform two steps: (1) "Rule in" all possible causes of Dr. Feit's death and (2) "Rule out" causes through a process of elimination whereby the last remaining potential cause is deemed the most likely cause of death. *See Creanga v. Jardal,* 185 N.J. 345, 886 A.2d 633, 639 (2005). Here, the District Court noted several aspects of Dr. Duong's differential diagnosis that rendered it unreliable. First, the District Court, in initially granting Great–West's motion *in limine,* stated that "Dr. Duong did not consider any other possible cause of death besides the rejected myocardial infarction theory and the conclusion of head or neck injuries that he espouses." *App.* at 16. Dr. Duong's differential diagnosis was therefore unreliable because he failed adequately to "rule in" potential causes.[12] The District Court also noted in its denial of Frani Feit's motion for reconsideration that Dr. Duong failed to rule out the possibility of a new fatal heart arrhythmia, *id.* at 169–70, despite Dr. Duong's acknowledgment that a new fatal heart arrhythmia could have possibly caused death and was undetectable by autopsy. *Id.* at 117; *see Creanga,* 886 A.2d at 640 (stating that a court can exclude evidence if an expert fails to offer an explanation for why a proffered alternative cause was ruled out).

In addition, even if the District Court determined that the underlying methodology (i.e. the differential diagnosis) was reli-

District Court explicitly addressed the "differential diagnosis" methodology by name. *Id.* at 164–72.

12. Frani Feit argues that there were only two possible causes of death, and that the District Court was wrong in stating that Dr. Duong failed to consider any other possible causes. *Appellant's Br.* at 45. However, the New Jersey Supreme Court states that it is error to "fail[ ] to consider a plausible hypothesis that would explain the condition." *Creanga,* 886 A.2d at 639. Here, it appears as though Dr. Duong simply picked the two most likely causes of death, and eliminated one based upon the available data. This error by Dr. Duong renders his opinion unreliable, because he failed to consider other *possible* causes of death (i.e., stroke, drug overdose, etc.), even if these other possible causes of death could have been ruled out through analysis of the autopsy report.

able, the District Court could still determine that the conclusion reached by Dr. Duong did not reliably flow from the data and methodology. *Heller*, 167 F.3d at 159; *see also General Elec. Co.*, 522 U.S. at 146, 118 S.Ct. 512 ("A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."). Here, the District Court determined that the allegedly insufficient autopsy report prevented Dr. Duong from ever being able effectively to "rule in" or "rule out" head and neck injury as the cause of Dr. Feit's death. *App.* at 170. Although we acknowledge that it is not fatal to a differential diagnosis that Dr. Duong could not affirmatively point to autopsy findings showing an injury to the head or neck, *see Creanga*, 886 A.2d at 642, the District Court did not abuse its discretion in determining that in this particular case Dr. Duong's opinion that a head and neck injury caused Dr. Feit's death was based on nothing more than speculation. *See App.* at 17.

## IV.

We have considered all other arguments made by the parties on appeal and conclude that no further discussion is necessary. For the above reasons, we will affirm the District Court.