**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0710-25

NEW JERSEY MOTOR
VEHICLE COMMISSION,

     Petitioner-Respondent,

v.

STEVEN D. BROKOWSKY,

     Respondent-Appellant.

_____

Submitted April 13, 2026 – Decided April 29, 2026

Before Judges Walcott-Henderson and Bergman.

On appeal from the New Jersey Motor Vehicle Commission.

John M. Holliday, attorney for appellant.

Jennifer Davenport, Attorney General, attorney for respondent (Janet Greenberg Cohen, Assistant Attorney General, of counsel; Sean Woods, Deputy Attorney General, on the brief).

PER CURIAM

Steven D. Brokowsky appeals from a final agency decision of petitioner, the New Jersey Motor Vehicle Commission ("MVC") suspending his driver's license under N.J.S.A. 39:5-30(a), following a fatal motor vehicle accident. Brokowsky argues MVC's decision that he violated the careless driving statute, N.J.S.A. 39:4-97, and the unsafe lane change statute, N.J.S.A. 39:4-88(b) was made arbitrarily and is wholly unsupported by any facts. Because the MVC's final agency decision lacks fair support in the record, we reverse.

I.

The relevant facts are not in dispute. Brokowsky admitted that on April 22, 2023, he visited a tavern in Hamilton Township, where over the course of about ninety minutes, he consumed four alcoholic beverages along with a salmon sandwich and french fries.

At approximately 4:40 p.m., Brokowsky returned to his vehicle, which was located in the tavern's parking lot, and proceeded to make a left turn, driving across two southbound lanes of traffic, and positioned his vehicle into the leftmost lane on Route 533 north. He then changed lanes, moving from the left to the right, and as he was doing so, the right side of his vehicle was struck by the front end of a vehicle driven by Joseph J. Celinski, who died at the scene as

2

a result of the collision with Brokowsky's vehicle.[1]  Subsequent toxicology testing revealed the decedent had a blood alcohol content level of 0.24%; three times the legal limit of 0.08%.  Additionally, the decedent tested positive for "7.0 ng/mL of Clonazepam, 55 ag/mt. 7-Amino Clonazepam, 6.9 ng/mL of Lamotrigiae, and 650 ng/mL Citalopram and Escitalopram."

Brokowsky was transported to Robert Wood Johnson University Hospital Hamilton where he was interviewed by Hamilton Township Police ("Hamilton Police") and administered a Horizontal Gaze Nystagmus sobriety test.  During the ensuing investigation, Brokowsky advised Officer Keith McDonald of the Hamilton Police that he had consumed alcoholic beverages at the tavern prior to the accident.  In his report, Officer McDonald noted that Brokowsky "did not have any visual signs of impairment from the Horizontal Gaze Nystagmus test," however, he read Brokowsky "his Miranda Rights at [6:35 p.m.] as a precaution."[2]

---

[1]  Emergency services responded to the scene of the accident shortly thereafter and pronounced Celinski deceased.

[2]  Miranda v. Arizona, 384 U.S. 436 (1966).

A-0710-25

That same evening, Brokowsky also consented to a blood draw, which occurred approximately three hours after the accident, at 7:43 p.m.[3] The results showed a blood alcohol content 0% and were negative for both drugs and cannabis.

Additionally, Hamilton Police Traffic Unit Supervisor, Sergeant Robert T. Gray reviewed footage from a surveillance camera located on a neighboring building, which revealed that just prior to impact, decedent had been traveling at 102 m.p.h. in a forty-five m.p.h. zone. Hamilton Police also recreated the scene of the fatal accident and concluded that because of the curvature of the roadway in that area and the wooded area surrounding it, Brokowsky's sightlines had been obstructed and he could have only seen the decedent's vehicle once it was within 620 feet of his location.

Further, the report also concluded that based on decedent's speed of approximately 150 feet per second, Brokowsky had at most four seconds to react once decedent's vehicle moved into his field of vision. Additionally, Officer McDonald concluded that Brokowsky could not have seen decedent's vehicle when he left the parking lot, as he "failed to turn in a manner consistent with

---

[3] Additionally, Hamilton Police applied for and were granted a judicial warrant for the blood draw.

A-0710-25

[N.J.S.A.] 39:4-123 when he drifted from the interior left lane into the exterior right lane of northbound [Route 533]. The movement into the exterior right lane resulted in [decedent's vehicle] side swiping [Brokowsky's vehicle]." He further concluded that "[t]he severity of the collision appears to be the result of [decedent's vehicle] traveling at an excessive speed."

As part of the ongoing investigation, the New Jersey State Police Fatal Investigation Unit reviewed downloaded data from Brokowsky's vehicle, including the engine control module, which revealed that Brokowsky had been traveling at twenty-five m.p.h. and moving slightly to the right at the time of impact with the decedent's vehicle.[4] Additionally, the State Police alleged Brokowsky violated both N.J.S.A. 39:4-97, for careless driving and N.J.S.A. 39:4-88(b), for an unsafe lane change.

After consultation with the Mercer County Prosecutor's Office, Hamilton Police issued Brokowsky the following motor vehicle summons: failing to yield while crossing a highway after emerging from a driveway, N.J.S.A. 39:4-66(b); unsafe lane change, N.J.S.A. 39:4-88(b); and improper left turn onto a two-lane

---

[4] No similar analysis was conducted on the decedent's vehicle allegedly due to cost constraints.

A-0710-25

roadway, N.J.S.A. 39:4-123(b). All charges were subsequently dismissed by the Hamilton Township Municipal Court.

Approximately eighteen months post-accident, Brokowsky received a letter from the MVC advising him that his license was scheduled to be suspended for 900 days effective November 25, 2024, as he had "allegedly committed, or [the] MVC has determined he committed" violations including: improper emerging from driveway, N.J.S.A. 39:4-66(b); unsafe lane change, N.J.S.A. 39:4-88(b); improper left turn, N.J.S.A. 39:4-123; and careless driving, N.J.S.A. 39:4-97.

Brokowsky requested a hearing and the matter was transferred to the Office of Administrative Law as a contested case under N.J.S.A. 52:14B-1 to -15 and N.J.S.A. 52:14F-1 to -23. In the meantime, the suspension of Brokowsky's driver's license was stayed pending the outcome of the plenary hearing.

The administrative hearing commenced approximately two years post-accident before Administrative Law Judge ("ALJ") Judith Lieberman included testimony from Sergeant Gray and Brokowsky. Sergeant Gray testified as to what he observed at the crash scene, the surveillance video he reviewed to

A-0710-25

estimate the vehicles' speed, his determination as to Brokowsky's sightlines while driving, and about the collection and testing of Brokowsky's blood.

Brokowsky testified about his action while driving and the position of his vehicle, as well as his experiences in the immediate aftermath, both at the scene and the hospital. At the conclusion of the hearing, ALJ Lieberman admitted the various investigative report, the toxicology report, and Brokowsky's driver's abstract in evidence, without objection.

ALJ Lieberman issued a thorough and well-reasoned written initial decision on September 17, 2025, finding Brokowsky's testimony credible, and specifically noting that:

> [Brokowsky] checked both of his mirrors and that his vehicle's blind-spot detector did not indicate that a vehicle was in his blind spot before he maneuvered his vehicle from the left to the right northbound lane of [Route 533]. He did not observe [decedent's vehicle] when he exited the restaurant's parking lot; turned left onto the road; and moved from the left to the right lane of the road. He did not observe [decedent's vehicle] because it was traveling at an extremely high speed that was well over twice the speed limit; the road was curved; and the view was obscured by a wooded area. Thus, there was a very limited "window" of time during which [Brokowsky] could have observed [decedent's vehicle]. These factors, taken together, compel a finding that [Brokowsky] did not observe [decedent's vehicle] when he changed lanes.

A-0710-25

ALJ Lieberman found that "[decedent's] speed and the limited sight line are the primary factors that led to the fatal collision," and further concluded:

> the [MVC] has not met its burden of proving by a preponderance of the evidence that [Brokowsky] committed the above moving violations and that his actions were a contributing cause of the fatal accident. While the death of the other driver was unquestionably a tragic accident, the preponderance of the evidence in the record does not support a finding that the collision was the result of respondent having operated his vehicle in violation of the Motor Vehicle Code or that the roadways would be safer for the public if [Brokowsky's] license were suspended.

Thereafter, ALJ Lieberman ordered Brokowsky's scheduled license suspension be reversed. The MVC appealed and filed exceptions to the initial decision, which Brokowsky opposed.

On October 22, 2025, the MVC issued its final agency decision, authored by Acting Chair and Commissioner of the MVC, Latrecia Littles-Floyd ("the Acting Commissioner"), rejecting the ALJ's initial decision and finding violations of careless driving, N.J.S.A. 39:4-97 and unsafe lane change, N.J.S.A. 39:4-88(b). The Acting Commissioner reasoned that Brokowsky's blood toxicology was negative, but of particular concern, "there was a significant delay of approximately [three] hours, between the time of the accident and the time [Brokowsky's] blood was drawn," and "negative blood result not only reflects

the passage of time and metabolizing of alcohol, but also [Brokowsky's] blood chemistry <u>at the time of collection</u>, not at the time of the accident." (emphasis in original). She further noted that the ALJ did not consider the "subsequent potential effects" of consuming four drinks within about ninety minutes, as Brokowsky had done before the fatal crash.

The Acting Commissioner reasoned that the record established by a preponderance of the evidence that Brokowsky had violated N.J.S.A. 39:4-88(b) and N.J.S.A. 39:4-97 and thereafter modified the ALJ's analysis and rejected her conclusions. Relying on <u>Cresse v. Parsekian</u>, 81 N.J. Super. 536, 548-49 (App. Div. 1963), the Acting Commissioner further stated:

> These facts, [weighed] properly under <u>Cresse</u>, are an aggravator—while there is no proof of intoxication, [Brokowsky's] own testimony of his alcohol consumption immediately prior to the accident, is evidence of [Brokowsky's] contribution to the accident. [Brokowsky's] decision to change lanes when there was an obstructed view of the roadway behind him is also a factor that weighs heavily against his actions and leads to the inescapable conclusion that those actions contributed to the accident.
>
> Assuming that [Brokowsky] was in full control of his vehicle, his decision to change lanes and not to yield the right of way, clearly contributed to the accident. His <u>potential</u> intoxication <u>may</u> have affected [Brokowsky's] judgment, and an additional review of the vehicle's mirrors before changing lanes <u>may</u> have prevented this tragedy.

[(Emphasis added).]

The Acting Commissioner suspended Brokowsky's license for ninety days, assigned a three-part driving reexamination, and ordered the payment of a $100.00 restoration fee. Brokowsky appealed and moved to stay the suspension of his license, which we granted on November 14, 2025.

Before us, Brokowsky argues the following single point:

Point I:

THE MVC'S OCTOBER 22, 2025 FINAL DECISION AND SUSPENSION ORDER ARE ERRONEOUSLY BASED UPON INSUFFICIENT EVIDENCE AND, THEREFORE, SHOULD BE REVERSED SINCE THE RECORD SHOWS THAT MR. BROKOWSKY DID NOT VIOLATE ANY MOTOR VEHICLE LAWS NOR, IN ANY WAY, CONTRIBUTE TO THE UNDERLYING APRIL 22, 2023 MOTOR VEHICLE ACCIDENT.

II.

Judicial review of an agency's determination is limited. Allstars Auto Group, Inc. v. New Jersey Motor Vehicle Comm'n, 234 N.J. 150, 157 (2018) (citing Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011)). A reviewing court "must be mindful of, and deferential to, the agency's 'expertise and superior knowledge of a particular field.'" Allstars, 234 N.J. at 158 (quoting Circus Liquors, Inc. v. Middletown Twp., 199 N.J. 1, 10 (2009)).

Moreover, "[a] reviewing court 'may not substitute its own judgment for the agency's, even though the court might have reached a different result." Allstars, 234 N.J. at 158 (quoting In re Stallworth, 208 N.J. 182, 194 (2011)). "An administrative agency's final quasi-judicial decision will be sustained unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." Allstars, 234 N.J. at 157 (quoting Russo, 206 N.J. at 27). Likewise, generally, "in reviewing administrative agency decisions, we accord substantial deference to an agency head's choice of remedy or sanction, seeing it as a matter of broad discretion, especially where considerations of public policy are implicated." In re Herrmann, 192 N.J. 19, 34-35 (2007).

When a vehicle crash results in a fatality, the MVC is empowered to suspend or revoke a driver's license for any motor vehicle statutory violation "or on any other reasonable grounds." Cresse, 81 N.J. Super. at 548-49 (quoting N.J.S.A. 39:5-30(a)). The MVC must only "prove [its] case by a preponderance of the credible evidence" to result in a suspension. Atkinson v. Parsekian, 37 N.J. 143, 149 (1962). Although "[i]t is not easy to lay down with precision the line of demarcation between a just and reasonable inference and mere conjecture or surmise, [a] bare quantitative preponderance is not enough. It is requisite that

11

the evidence be such as to lead a reasonably cautious mind to the given conclusion." Bornstein v. Metro. Bottling Co., 26 N.J. 263, 275 (1958) (citing Austin v. Pennsylvania R. Co., 82 N.J.L. 416 (E. & A. 1911)). In other words, to support the MVC's decision, the evidence must only be "a mere preponderance of probabilities, and, therefore, a sufficient basis for decision." Bornstein, 26 N.J. at 274 (1958).

Through N.J.S.A. 39:5-30(a), the Legislature "has given [the MVC] powers greater, in some respects, than those of a judge," with whom revocation and suspension are only contingent upon a finding of guilt beyond a reasonable doubt. Cresse, 81 N.J. Super. at 548-49. However, the imposition of a suspension by the MVC is for the purpose of reforming a licensee, rather than to frighten or deter other drivers, and any imposition of a retributive sanction is "beyond the power of the [MVC]." Cresse, 81 N.J. Super. at 549. To that end, "[t]o impose a suspension without regard to the nature and the degree of the negligence or violation, and to the surrounding circumstances, for the primary purpose of deterring others, is punishment and not prophylaxis." Cresse, 81 N.J. Super. at 551.

12

In Cresse, we addressed the factors the MVC must consider when determining whether a suspension or revocation is required under N.J.S.A. 39:5-30(a), for either a statutory violation or any other reasonable ground:

> Among other things, [the MVC] should consider the facts which constitute the particular violation; whether the motorist was willful or reckless, or merely negligent, and, if merely negligent, how negligent; how long the motorist has been driving; whether this is [the motorist's] first offense; whether [the motorist] has been involved in any accidents; [the motorist's] age and physical condition; whether there were any aggravating circumstances, such as drinking, or, on the other hand, whether there were extenuating circumstances.

> Upon these and all the other facts and circumstances, [the MVC] should determine whether it reasonably appears, as a matter of prophylaxis and not of punishment, that the motorist should be kept off the highway, and, if so, for how long.

> [Cresse, 81 N.J. Super. at 539.]

Applying the above legal principles, we reject as arbitrary, unreasonable, and capricious the final decision of the MVC, because the record does not fairly support the finding that Brokowsky's consumption of alcohol constitutes an aggravating factor leading to violations of N.J.S.A. 39:4-88(b) and N.J.S.A. 39:4-97. We further note that while the MVC clearly has broad authority to suspend or revoke a driver's license for either a violation of statute or any other

13

reasonable grounds, it must "prove [its] case by a preponderance of the credible evidence." Atkinson, 37 N.J. at 149.

Based on the record before us, it is clear that the Acting Commissioner's decision does not comport with the requirements that the "evidence be such as to lead a reasonably cautious mind to the given conclusion," and instead the Acting Commissioner arrived at her conclusion based on findings which lack fair support in the record. See Bornstein, 26 N.J. at 275; Allstars, 234 N.J. at 157.

More particularly, the Acting Commissioner's decision disregards the negative results of the blood alcohol test and relies on her subjective belief that Brokowsky's blood alcohol level was negative due to the three-hour delay in testing. The Acting Commissioner had neither corroborating testimony from a lay witness nor expert on which to base this finding. Likewise, the Acting Commissioner overlooked Officer McDonald's observation that Brokowsky "did not have any visual signs of impairment from the Horizontal Gaze Nystagmus test" which was administered sometime before "1835 hours," or 6:35 p.m., approximately one hour and forty-five minutes after Brokowsky had left the tavern. Thus, the Acting Commissioner's decision to weigh Brokowsky's drinking as an "aggravating factor[], notwithstanding the negative toxicology

14

report," and Horizontal Gaze Nystagmus test was unreasonable. See Allstars, 234 N.J. at 157.

We are further convinced the Acting Commissioner repeated this same error in analyzing Brokowsky's culpability as to the alleged careless driving and unsafe lane charges, which the Acting Commissioner analyzed together. The careless driving statute "specifically incorporates a common law standard of care." Labega v. Joshi, 470 N.J. Super. 472, 490 (App. Div. 2022); see also Dolson v. Anastasia, 55 N.J. 2, 10 (1969), and provides a person who drives a vehicle carelessly, or without due caution and circumspection, in a manner so as to endanger, or be likely to endanger, a person or property, shall be guilty of careless driving. N.J.S.A. 39:4-97.

Here, the Acting Commissioner also failed to address ALJ Lieberman's finding as to the degree of Brokowsky's negligence and whether "it is reasonable to conclude that there would not have been a collision had the [decedent traveled] at or close to the speed limit, as the cars would not have been in the same area of the road."

Likewise unsupported is the Acting Commissioner's finding that Brokowsky contributed to the accident by deciding "to change lanes when there was an obstructed view of the roadway behind him." The Acting Commissioner

treated that circumstance as an aggravating factor while ignoring the decedent's excessive speed and the mere seconds Brokowsky had to react.

Further, the Acting Commissioner made the same error in analyzing Brokowsky's alleged violation by executing an unsafe lane change under N.J.S.A. 39:4-88(b), which provides:

> When a roadway has been divided into clearly marked lanes for traffic, drivers of vehicles shall obey the following regulations:
>
> (a) A vehicle shall normally be driven in the lane nearest the right-hand edge or curb of the roadway when that lane is available for travel, except when overtaking another vehicle or in preparation for a left turn.
>
> (b) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from that lane until the driver has first ascertained that the movement can be made with safety.
>
> . . . .
>
> [N.J.S.A. 39:4-88.]

In her decision, the Acting Commissioner concluded Brokowsky violated the unsafe lane change statute as the State Police report stated that Brokowsky "'maneuvered his vehicle into the right northbound lane and failed to observe the rapidly overtaking [decedent's vehicle] contrary to N.J.S.A. 39:4-88(b)," and the police found Brokowsky's failure to yield to be a contributing cause of the

16

crash. The evidence in support of the alleged violation is based upon the unfounded premise that Brokowsky was intoxicated and could have made "an additional review of the vehicle's mirrors" and therefore lacks fair support in the record.

Significantly, the Acting Commissioner did not explicitly weigh each of the Cresse factors for either statute in her written decision. Rather, she summarily stated that she had already done so and they weighed in favor of suspension.

Because we are satisfied that the Acting Commissioner's final agency decision, suspending Brokowsky driver's license and imposing sanctions, was based on findings that lacked fair support in the record, we reverse and vacate the stay and suspension. We do not retain jurisdiction.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M. C. Harley

Clerk of the Appellate Division

17